No. 2—09—1336
Opinion filed May 12, 2011

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| PAUL J. SALCE, | ) | Appeal from the Circuit Court |
| | ) | of Du Page County. |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | No. 06—L—1018 |
| | ) | |
| YOUNG SIL SARACCO, a/k/a Youngsil | ) | |
| Cho, and JOHN LACKOS, | ) | |
| | ) | |
| Defendants-Appellees | ) | Honorable |
| | ) | Dorothy F. French, |
| (Euro World Wines, Inc., Defendant). | ) | Judge, Presiding. |

JUSTICE SCHOSTOK delivered the judgment of the court, with opinion.
Justices Bowman and Birkett concurred in the judgment and opinion.

**OPINION**

The plaintiff, Paul Salce, appeals from the orders of the circuit court of Du Page County dismissing his first amended complaint and granting the motion of the defendants, Young Sil Saracco and John Lackos,[1] for judgment on the pleadings as to his second amended complaint. On appeal, the plaintiff argues that the trial court misinterpreted the parties' shareholders' agreement. We affirm.

_____

[1]Although the plaintiff also sued Euro World Wines, Inc., no appearance was filed on its behalf in the trial court. The dispute in the trial court, and on appeal, is solely between plaintiff Salce and defendants Saracco and Lackos.

On October 17, 2006, the plaintiff filed a complaint sounding in breach of contract. The complaint alleged that the plaintiff and the defendants formed the corporation Euro World Wines, Inc., and on October 31, 2003, entered into a shareholders' agreement. The corporation was established to sell spirits, wine, beer, olive oil, and water cider. The plaintiff held 51% of the shares of the corporation and the defendants each held 24.5% of the shares. The shareholders' agreement provided in pertinent part:

"Article 4. Contributions to Corporation

Future Contributions

Section 4.01. Each Shareholder shall be obligated to make the advances as hereinafter set forth in this Paragraph, until such obligations shall be terminated by a vote of the holder(s) of fifty-one percent (51%) or more of the stock of the Corporation. Each Shareholder shall advance to the Corporation the Shareholder's pro rata share (the ownership percentage set opposite the name of each Shareholder on page 1 of this Agreement) of all costs, expenses, or charges with respect to the operation of the Corporation and the ownership, operation, maintenance and upkeep of any Corporation Property, including but not limited to ad valorem taxes, debt amortization (including interest payments), insurance premiums, repairs, costs of capital improvements made on approval by the Shareholders as herein provided, management fees or salaries, advertising expenses, professional fees, wages and utility costs, to the extent such costs, expenses, or charges exceed the income, if any, derived from the Corporation and the proceeds of any loans made to the Corporation.

The holder(s) of fifty-one percent (51%) or more of the stock of this Corporation may estimate the cash requirements of the Corporation for periods of up to one (1) year in advance

and request payment of each Shareholder's pro rata share of said estimated cash requirements, and each Shareholder shall pay said amount within ten (10) days after receiving a statement thereof."

The corporation conducted business through 2006. On February 16, 2006, the plaintiff tendered to the defendants a capital call, requesting them to pay their *pro rata* shares of the corporate liabilities. The defendants refused to pay those amounts. The plaintiff thereafter filed a complaint for breach of contract.

On December 7, 2006, the defendants filed a request for a bill of particulars as to the corporation's income as well as the costs, expenses, and charges that it had incurred. On May 8, 2007, the plaintiff filed a revised bill of particulars. In that bill, the plaintiff indicated that he, or companies that he owned, had loaned $212,889 to the corporation. He indicated that none of those loans had been repaid. The plaintiff further indicated that for 2002 through 2007, the corporation had total revenues of $143,753 and total losses of $275,237. This resulted in a net loss of $131,484.

On June 4, 2007, the defendants filed a motion to dismiss the plaintiff's amended complaint, pursuant to section 2—615 of the Illinois Code of Civil Procedure (the Code) (735 ILCS 5/2—615(a) (West 2008)). The defendants argued that the plaintiff's bill of particulars revealed that the corporation's income plus loans received exceeded the corporation's actual out-of-pocket expenses. As such, the defendants insisted that a capital call could not be made under section 4.01 of the shareholders' agreement. The defendants therefore argued that the amended complaint had failed to state a valid cause of action.

On June 11, 2008, following a hearing, the trial court granted the defendants' motion to dismiss the plaintiff's complaint with prejudice with regard to a "current capital call." The trial court,

however, granted the plaintiff leave to file a second amended complaint under a "future needs capital call" theory.

On August 6, 2008, the plaintiff filed a second amended complaint. Count I alleged a breach of the capital call provisions contained in the second paragraph of section 4.01 of the shareholders' agreement. Count I alleged that the plaintiff had notified the defendants of the corporation's anticipated cash-flow obligations over the next 12 months, including the repayment of loans that were owed to the plaintiff. The plaintiff alleged that the defendants failed to pay their *pro rata* shares of said capital call within 10 days after receiving the request. Count II of the plaintiff's second amended complaint restated the allegations of the first amended complaint. The trial court subsequently dismissed this count because it merely restated the alleged cause of action that the trial court had already dismissed.

On September 24, 2008, the defendants filed a motion for judgment on the pleadings or, in the alternative, a motion to dismiss the plaintiff's second amended complaint. The defendants argued that the plaintiff had not made a proper future-cash-flow capital call because, although the corporation stopped doing business in 2006, the plaintiff did not make a future-cash-flow capital call until June 23, 2008. The defendants maintained that the language of the parties' agreement made it clear that the two minority shareholders could not be subjected to a current-liabilities capital call as long as the corporation had income and loans to pay for the costs, expenses, or charges. The defendants argued that it would be improper to construe the parties' agreement to provide that the limitations on a current-liabilities capital call could be easily bypassed by renaming the capital call a future-cash-flow capital call. The defendants argued that a future-cash-flow capital call could be

made only when a current-liabilities capital call would be permitted; otherwise, the language limiting a current-liabilities capital call would be effectively meaningless.

On June 25, 2009, following a hearing, the trial court granted the defendants' motion for judgment on the pleadings. The trial court explained that it interpreted the second paragraph in section 4.01 (regarding future-cash-flow capital calls) as defining the first paragraph in that section (regarding current-liabilities capital calls). The plaintiff thereafter filed a timely notice of appeal.

On appeal, the plaintiff raises two contentions: (1) the trial court erred in granting the defendants' motion to dismiss his first amended complaint and (2) the trial court erred in granting the defendants' motion for judgment on the pleadings as to his second amended complaint. We will address these issues together, as they both pertain to the proper interpretation of section 4.01 of the shareholders' agreement.

When dismissal is sought pursuant to section 2—615 of the Code, the only issue before the court is whether the complaint or a particular count thereof states a cause of action upon which relief can be granted. *Kling v. Landry*, 292 Ill. App. 3d 329, 333 (1997). The very same inquiry is presented when a motion for judgment on the pleadings is filed by a defendant prior to the filing of an answer. *Mitchell v. Norman James Construction Co.*, 291 Ill. App. 3d 927, 932 (1997). Consequently, the granting of judgment on the pleadings in favor of a defendant who has never answered the plaintiff's complaint is the functional equivalent of dismissing the complaint for failure to state a cause of action against that defendant. *Id.*

When the legal sufficiency of all or part of a complaint is challenged, all well-pleaded facts in the count of the complaint under attack are taken as true, and all reasonable inferences favorable to the plaintiff must be drawn from those facts. *Id.* In reviewing the sufficiency of a complaint, the

court disregards all conclusions of law or fact unsupported by specific factual allegations upon which such conclusions rest. *Id.*

The interpretation of any contract is a question of law and is subject to *de novo* review. *Gallagher v. Lenart*, 226 Ill. 2d 208, 219 (2007). The primary goal of contract interpretation is to give effect to the intent of the parties. *Virginia Surety Co. v. Northern Insurance Co. of New York*, 224 Ill. 2d 550, 556 (2007). In determining the intent of the parties, a court must consider the document as a whole and not focus on isolated portions of the document. *Premier Title Co. v. Donahue*, 328 Ill. App. 3d 161, 164 (2002). If the language of a contract is clear and unambiguous, the intent of the parties must be determined solely from the language of the contract itself, which should be given its plain and ordinary meaning, and the contract should be enforced as written. *Virginia Surety Co.*, 224 Ill. 2d at 556.

Here, the plain language of section 4.01 of the parties' agreement provided that the majority shareholder could make a capital call only if the corporation's costs, expenses, or charges exceeded its income and loan proceeds. Construed in the light most favorable to the plaintiff, his pleadings reveal that, between 2002 and 2007, the corporation had income of $143,753 and loan proceeds of $212,889, for a total of $356,642. For that same time frame, the corporation had expenses of $275,237. Thus, as expenses did not exceed income and loan proceeds, a capital call was not proper under the first paragraph of section 4.01.

We also believe, based on the plaintiff's pleadings, that a capital call was not proper under the second paragraph of section 4.01. That paragraph provides that the majority shareholder "may estimate the cash requirements of the Corporation for periods of up to one (1) year in advance and request payment of each Shareholder's pro rata share of said estimated cash." That paragraph must

be read in harmony with the first paragraph. See *Hoyt v. Continental Casualty Co.*, 18 Ill. App. 3d 599, 600 (1974) (a court is to interpret phrases in a contract in a manner "to give a common sense meaning to the whole contract"). Indeed, both paragraphs are listed under the same heading—future contributions. Interpreting those paragraphs together, it is apparent that the corporation would have "cash requirements" only when its costs, expenses, or charges exceeded its income and loan proceeds. Accordingly, because the plaintiff's pleadings demonstrate that the corporation's expenses, costs, or charges did not exceed its income and loan proceeds, the corporation did not have cash requirements such that a capital call would be authorized under the second paragraph of section 4.01.

In so ruling, we note that the plaintiff insists that a capital call was proper because the loans to the corporation were legitimate expenses that had to be repaid. That may be true. However, the plain language of section 4.01 makes no reference to the legitimacy of the expenses. Rather, it references whether loan proceeds and income exceed expenses. As those revenues did not exceed expenses, a capital call was not proper under section 4.01.

We also reject the plaintiff's argument that the outstanding loans should have been added to the expenses in calculating whether revenues exceeded expenses. In such a scenario, the plaintiff insists, expenses would exceed revenues. However, to interpret the contract as such would render meaningless the language in the contract that "proceeds of any loans made to the Corporation" are to be added to income. This construction would mean that every dollar added in revenues would automatically be offset by a dollar in expenses. We decline to adopt such a construction. See *Fontana v. TLD Builders, Inc.*, 362 Ill. App. 3d 491, 510-11 (2005) (court must construe a contract such that none of its terms are rendered meaningless or superfluous). For this same reason, we reject the plaintiff's argument that his complaint set forth a valid cause of action because the outstanding

loans were actually "charges," which must be taken into account when considering whether "costs, expenses, or charges" exceed income and loan proceeds. To interpret "charge" in such a manner would also render meaningless the agreement's language that the proceeds of any loans made to the corporation are to be added to income.

Finally, we reject the plaintiff's argument that our interpretation of section 4.01 would mean that loans made to a corporation could never be repaid via a capital call. We need not address that hypothetical argument. See *1515 North Wells, L.P. v. 1513 North Wells, L.L.C.*, 392 Ill. App. 3d 863, 869 (2009) (arguments based on hypothetical factual settings will not be considered by a reviewing court). Rather, considering solely the plaintiff's pleadings, we conclude that the plaintiff failed to set forth a valid cause of action. The trial court therefore properly dismissed the plaintiff's first amended complaint and properly granted the defendants judgment on the pleadings on the plaintiff's second amended complaint.

For the foregoing reasons, the judgment of the circuit court of Du Page County is affirmed.

Affirmed.