# Illinois Official Reports

## Appellate Court

---

*Associates Asset Management, LLC v. Cruz*, 2019 IL App (1st) 182678

---

| | |
|---|---|
| Appellate Court Caption | ASSOCIATES ASSET MANAGEMENT, LLC, Successor in Interest to Olympus Mortgage Company, Plaintiff-Appellee, v. ROBERT L. CRUZ, Defendant-Appellant. |
| District & No. | First District, Second Division<br>No. 1-18-2678 |
| Filed | November 5, 2019 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 2013-L-005579; the Hon. Brigid Mary McGrath, Judge, presiding. |
| Judgment | Reversed. |
| Counsel on Appeal | Arthur C. Czaja, of Niles, for appellant.<br><br>Richard J. Sorman, of Sorman & Frankel, Ltd., of Chicago, for appellee. |
| Panel | JUSTICE COGHLAN delivered the judgment of the court, with opinion.<br>Justices Lavin and Pucinski concurred in the judgment and opinion. |

**OPINION**

¶ 1      In 2013, plaintiff, Associates Asset Management, LLC (AAM), brought a breach of contract action against defendant Robert Cruz, seeking payment on a promissory note with a maturity date of November 1, 2034. The complaint sought the full amount due plus interest, as if the note had been accelerated. Cruz alleged, as an affirmative defense, that AAM's suit was premature because the note required AAM to give him notice and an opportunity to cure before it could declare default and accelerate the note, which AAM failed to do.

¶ 2      The trial court found that personal service of the complaint on Cruz constituted sufficient notice of both default and acceleration. Following a bench trial, the court entered judgment for AAM in the amount of $120,402.86, representing the entire principal amount, interest accrued from the date of service until the date of judgment, and attorney fees. Cruz now appeals. We agree with Cruz that AAM's suit was premature and reverse.

¶ 3                                   BACKGROUND

¶ 4      In 2004, Cruz and Juan Calderon purchased a condominium in Chicago. The purchase was financed by a promissory note for $69,800 that Cruz and Calderon executed in favor of Olympus Mortgage Company (Olympus), AAM's predecessor in interest. (Calderon was later discharged in a Chapter 7 bankruptcy proceeding and is not a party to this appeal.) The note was executed on October 22, 2004, and it was secured by a second mortgage on the condominium, executed on the same day.

¶ 5      Although the note's maturity date is November 1, 2034, section 4 of the note provides for acceleration in the case of default, as follows:

> "(B) Notice from Note Holder
>
> If I do not pay the full amount of each monthly payment on time, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, I will be in default. That date must be at least 10 days after the date on which the notice is mailed to me or, if it is not mailed, 10 days after the date on which it is delivered me.
>
> (C) Default
>
> If I do not pay the overdue amount stated in the notice described in Section 4(B) below [*sic*], I will be in default. If I am in default, the Note Holder may require me to immediately pay the full amount of principal which has not been paid and all the interest that I owe on that amount."

Under the heading "Giving of Notices," the note states:

> "Any notice that must be given to me under this Note will be given by delivering it or mailing it by certified mail addressed to me at the Property Address above [*i.e.*, the condominium]. A notice will be delivered to me at a different address if I give the Note Holder a written notice of my different address."

Finally, the note expressly references the acceleration provision in Olympus's mortgage on the condominium, as follows:

> "In addition to the protections given to the Note Holder under this Note, a Mortgage, dated October 22, 2004, protects the Note Holder from possible losses which

might result if I do not keep the promises which I make in this Note. That Mortgage describes how and under what conditions I may be required to make immediate payment in full of all amounts that I owe under this Note."

¶ 6 The referenced text in the mortgage is a standard acceleration clause titled "Acceleration; Remedies," stating in bold print:

"[U]pon Borrower's breach of any covenant or agreement of Borrower in this Mortgage, including the covenants to pay when due any sums secured by this Mortgage, Lender prior to acceleration shall give notice to Borrower *** specifying: (1) the breach; (2) the action required to cure such breach; (3) a date, not less than 10 days from the date the notice is mailed to Borrower, by which such breach must be cured; and (4) that failure to cure such breach may result in acceleration of the sums secured by this Mortgage, foreclosure by judicial proceeding, and sale of the Property."

¶ 7 Cruz and Calderon ceased making payments on the note after July 5, 2005. In November 2005, the senior lender filed an action to foreclose on the condominium. *Long Beach Mortgage Co. v. Ortiz*, No. 05-CH-20399 (Cir. Ct. Cook County, Aug. 2, 2006). A judgment of foreclosure and sale was entered, and the condominium was sold at a judicial sale in 2006. Olympus, as the junior lender, was named as a defendant in the foreclosure case but did not participate in the proceedings. After the condominium was sold, Olympus assigned the note to Ameriquest Mortgage Company, which assigned the note to AAM.

¶ 8 Over the next several years, AAM sent four letters to Cruz demanding payment of the debt. None of the letters were sent by certified mail.

(1) The first letter, dated February 21, 2008, was sent from AAM's counsel to Cruz and Calderon at the condominium address. The letter explained that AAM recently acquired the loan file and that "your account is seriously past due" with an unpaid balance of $69,587.60 (*i.e.*, the entire outstanding principal). The letter also offered a "repayment plan," under which Cruz and Calderon could pay $487.11 per month for six months to be reevaluated for another repayment or settlement plan, and a "settlement plan," under which Cruz and Calderon could pay 60% of the principal balance to be forgiven of any remaining obligations. It provided that these offers were good for 60 days, after which AAM would "exercise all of its legal rights" under the loan.

(2) The second letter, dated May 5, 2008, was sent from an AAM loan counselor to Cruz at a California Avenue address in Chicago. (Cruz claims he never resided there.) In the letter, the loan counselor recommended that Cruz call him to "work out a solution" with his debt. The letter did not state the overdue amount or provide a period for repayment.

(3) The third letter, dated January 21, 2010, was sent from AAM's legal review department to Cruz and Calderon at the California Avenue address. It stated that AAM "has reviewed your account and is currently in the process of forwarding it to our legal department." Again, the letter did not state the overdue amount or provide a period for repayment.

(4) The fourth and final letter, dated April 23, 2013, was sent from AAM's counsel to Cruz and Calderon at a Van Buren Street address in Chicago. It stated that Cruz and Calderon owed $69,587.60 in principal and $58,809.24 in accrued interest, for a total

of $128,396.84. It further stated that Cruz and Calderon had 14 days in which to make payment in full if they wished to resolve the matter without a lawsuit.

¶ 9    On May 28, 2013, AAM filed the present breach of contract action against Cruz, alleging that Cruz breached the terms of the note by failing to make payments since July 5, 2005. AAM sought a judgment against Cruz in the amount of $128,396.84, plus attorney fees and costs.

¶ 10    Cruz filed an answer in which he alleged, as an affirmative defense, that AAM failed to give him notice of its intent to declare a default and accelerate the note, a condition precedent to suit. Cruz stated that under the plain language of the note, AAM was required to send him a predefault notice via certified mail, giving him a 10-day grace period in which he could cure the missing payments to avoid default.

¶ 11    In response to AAM's requests to admit, Cruz admitted that he entered into the note with Olympus and failed to repay the loan proceeds or the accrued interest due on the loan proceeds. Nevertheless, Cruz filed a combined motion for summary judgment and motion to dismiss under section 2-619.1 of the Code of Civil Procedure (735 ILCS 5/2-619.1 (West 2016)), arguing that he was entitled to judgment as a matter of law as a result of AAM's failure to satisfy the contractual notice requirements. With regard to AAM's demand letters, Cruz argued that they were deficient in substance and, additionally, were not sent by certified mail as required by the note.

¶ 12    After briefing by the parties, the trial court granted Cruz's motion to dismiss "as to plaintiff's request to recover the accelerated loan amount" but denied the motion in all other respects. The court also gave AAM leave to replead its cause of action "as to a non-accelerated loan balance." Accordingly, AAM filed an amended complaint against Cruz in which it sought to recover $58,809.24, representing the accrued interest on the loan plus attorney fees and costs, but it did not seek to recover any of the unpaid principal. Cruz filed an answer in which he again asserted, as an affirmative defense, that AAM did not give him sufficient notice of default, thus failing to satisfy a condition precedent to suit.

¶ 13    The case proceeded to a bench trial on December 3, 2018. Before witnesses were heard, the parties argued the issue of notice before the court. Cruz argued that, pursuant to the terms of the note, AAM could not declare a default without giving notice and an opportunity to cure, and all of AAM's letters allegedly sent to Cruz were defective in that regard. AAM argued that it would be "ridiculous" to require AAM to nonsuit the case, give proper notice, and then "start all over again" with a new complaint.

¶ 14    The trial court agreed with AAM and found, as a matter of law, that service of the complaint on Cruz satisfied the notice provisions of the note with regard to both default and acceleration. The court also rejected Cruz's argument that he was never given an opportunity to cure the default, stating that "this is an old suit" and that Cruz could have paid at any time after the complaint was filed in 2013. Thus, the court held, contrary to its earlier ruling on Cruz's motion to dismiss, that AAM was entitled to seek the entire principal balance of the contract.

¶ 15    At trial, Mark Mancuso, a collections manager for AAM, testified that he maintains AAM's records in the normal course of business. Based on those records, Mancuso stated that Cruz's last payment on the note was on July 5, 2005. AAM acquired the note in November 2007 and attempted to collect by sending three letters to Cruz on February 21, 2008; May 5, 2008; and January 21, 2010. After that, AAM forwarded the case to its legal department, which sent a fourth letter to Cruz.

¶ 16     Cruz, testifying on his own behalf, admitted that he borrowed money from Olympus to buy the condominium and did not repay it. But after the condominium was foreclosed on and sold in 2006, Cruz "thought that was the end of this situation." He never received any letters from AAM, nor did he send them any written notice of a change in his address. He no longer lived at the condominium when AAM's first letter was sent in February 2008, and he never lived at the California Avenue address to which AAM's second and third letters were sent.

¶ 17     Following closing arguments by the parties, the trial court entered judgment in favor of AAM and against Cruz. It reiterated its finding that the notice requirement was met by service of the complaint and, therefore, only awarded interest from that date forward. Thus, the court entered judgment in the amount of $120,402.86,[1] representing (1) $69,854 in principal, (2) $35,048.86 in interest accrued between April 14, 2014 (the date of service), and December 3, 2018 (the date of judgment), and (3) $15,500 in attorney fees. In its written order, the court stated: "The court finds that the service of process accomplished both a notice of default and acceleration of the subject note."

¶ 18                                        ANALYSIS

¶ 19     Cruz argues that AAM's suit is premature because AAM did not fulfill the contractual conditions precedent to declaring default and accelerating the note. He further argues that the trial court erred when it found that service of process was sufficient to satisfy those requirements.

¶ 20     We will not disturb the trial court's findings of fact unless they are against the manifest weight of the evidence. *Cathay Bank v. Accetturo*, 2016 IL App (1st) 152783, ¶ 38. But this case also requires us to interpret the parties' contract, which presents a question of law that we review *de novo*. *Id.* ¶ 26. The primary goal of contract interpretation is to effectuate the intent of the parties. *Salce v. Saracco*, 409 Ill. App. 3d 977, 981 (2011). In doing so, we must consider the document as a whole rather than focusing on isolated portions of the document. *Id.* When the language of a contract is clear and unambiguous, we will determine the intent of the parties solely from that language and enforce the contract as written. *Id.*

¶ 21     The parties raise three main issues. First, under the language of the note, was AAM required to give predefault notice to Cruz? Second, was AAM also required to give preacceleration notice to Cruz? Third, to the extent that notice is required, did AAM fulfill such requirements? We consider these questions in turn.

¶ 22                                   Predefault Notice

¶ 23     Initially, the parties dispute whether the note requires AAM to give Cruz notice prior to declaring a default.

¶ 24     The relevant provisions of the note, as set forth in section 4, are as follows:

"(B) Notice from Note Holder

If I do not pay the full amount of each monthly payment on time, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, I will be in default. That date must be at least 10 days after the date on

---

[1] This number was misstated in the court's December 3, 2018, judgment order due to a computational error, but it was later corrected by an agreed order entered on December 12, 2018.

which the notice is mailed to me or, if it is not mailed, 10 days after the date on which it is delivered me.

    (C) Default

    If I do not pay the overdue amount stated in the notice described in Section 4(B) below [*sic*], I will be in default. If I am in default, the Note Holder may require me to immediately pay the full amount of principal which has not been paid and all the interest that I owe on that amount."

These provisions clearly describe notice as a precondition to default: Cruz will be in default *if* the note holder sends the notice described in section 4(B) *and* he fails to pay the stated overdue amount within the allotted time. No alternative procedure for declaring a default is given in the note.

¶ 25    AAM nevertheless argues that, because the note provides that "the Note Holder *may* send *** a written notice" (emphasis added), it is permissive rather than mandatory and, therefore, sending such a notice is not required. See *Flanigan v. Board of Trustees of the University of Illinois at Chicago*, 2018 IL App (1st) 170815, ¶ 30 (citing *Professional Executive Center v. La Salle National Bank*, 211 Ill. App. 3d 368, 379 (1991) ("Illinois courts interpret the word 'may' as permissive and 'shall' as mandatory in private contracts.")). Technically, AAM is correct. The note holder is not required to send a section 4(B) notice; concomitantly, the note holder is not required to try and collect any outstanding debt. The note holder *may* forbear pursuing its rights in case of nonpayment. But considering the note as a whole, as we must (*Salce*, 409 Ill. App. 3d at 981), it is apparent that if the note holder wishes to declare default (as AAM clearly does), the only contractual mechanism for doing so is by following the procedure set forth in sections 4(B) and (C). Thus, we agree with Cruz that, under the plain language of the note, notice is a contractual condition precedent to default.

¶ 26                                  Preacceleration Notice

¶ 27    The parties next dispute whether the note requires AAM to give additional notice prior to accelerating the note, pursuant to the mortgage's acceleration clause.

¶ 28    Although the note's acceleration clause in section 4(C) does not contain a notice requirement, the note explicitly references the mortgage's acceleration clause, stating that the mortgage "describes how and under what conditions I may be required to make immediate payment in full of all amounts that I owe under this Note." Meanwhile, the mortgage, under the heading "Acceleration; Remedies," provides that prior to acceleration, the lender "shall" give notice to the borrower specifying:

    "(1) the breach; (2) the action required to cure such breach; (3) a date, not less than 10 days from the date the notice is mailed to Borrower, by which such breach must be cured; and (4) that failure to cure such breach may result in acceleration of the sums secured by this Mortgage, foreclosure by judicial proceeding, and sale of the Property."

¶ 29    Cruz argues that the mortgage's acceleration clause is incorporated into the note and, therefore, a lender who wishes to accelerate the note must comply with the notice provisions in the mortgage's acceleration clause. We agree. "Where a writing refers to another document, that other document, or the portion to which reference is made, becomes constructively a part of the writing, and in that respect the two form a single instrument. The incorporated matter is to be interpreted as part of the writing." 11 Samuel Williston & Richard A. Lord, A Treatise

on the Law of Contracts § 30.25 (4th ed. 1999); see also *Unifund CCR Partners v. Shah*, 407 Ill. App. 3d 737, 743 (2011) ("It is a fundamental princip[le] of contract law that an instrument may incorporate all or part of another instrument by reference." (Internal quotation marks omitted.)); *Wilson v. Wilson*, 217 Ill. App. 3d 844, 853 (1991) (when a contract shows an intention to incorporate all or part of another document by reference, the additional provisions "become as much a part of the contract as if they were expressly written in it"). In this case, the note states that the mortgage describes under what conditions the note may be accelerated. That language clearly demonstrates the parties' intent to incorporate the mortgage's preacceleration notice requirements in the note.

¶ 30    AAM nevertheless argues that the note and mortgage must be interpreted separately, citing *Abdul-Karim v. First Federal Savings & Loan Ass'n of Champaign*, 101 Ill. 2d 400 (1984). In *Abdul-Karim*, plaintiffs executed a note and a mortgage in favor of defendants. The mortgage contained a due-on-sale provision that was neither incorporated nor referred to in the note. *Id.* at 404. Our supreme court held that the note and the mortgage were separate contracts and, therefore, the creditor could elect to sue on the mortgage alone and enforce the due-on-sale provision even though the provision was not mirrored in the note. *Id.* at 405-07. But *Abdul-Karim* is readily distinguishable from the present case, where the mortgage provision at issue is expressly referenced and incorporated in the note.

¶ 31    AAM additionally asserts that referencing the terms of the mortgage is improper since the mortgage was extinguished in foreclosure. But AAM presents no argument or authority in support of this contention, which is thereby forfeited. See Ill. S. Ct. R. 341(h)(7), (i) (eff. May 25, 2018). Nor do we find any merit in AAM's assertion. Because we treat the incorporated clause as if it were expressly written in the note (*Wilson*, 217 Ill. App. 3d at 853), and because the note is a separate contract from the mortgage (see *Abdul-Karim*, 101 Ill. 2d at 405), the extinction of the mortgage does not affect our interpretation of the note. Consequently, we find the note requires AAM to give a preacceleration notice as described in the "Acceleration; Remedies" clause of the mortgage.

¶ 32                    Whether AAM Met the Note's Notice Requirements

¶ 33    Thus, we turn to the central issue of this case, namely, whether the trial court erred in concluding that AAM satisfied the note's predefault and preacceleration notice requirements. Cruz argues that AAM's notices were inadequate and AAM's suit was therefore premature. AAM does not dispute that it failed to strictly comply with the note's notice requirements, but it argues that it gave Cruz the "essential information" to advise him that payment under the note was long overdue.

¶ 34    A "condition precedent" is an act that must be performed or an event that must occur before a contract becomes effective or before a party is required to perform. *Accetturo*, 2016 IL App (1st) 152783, ¶ 32. As discussed, the note in this case sets forth conditions precedent to both default and acceleration. *Cf. Credit Union 1 v. Carrasco*, 2018 IL App (1st) 172535, ¶ 15 (satisfaction of mortgage's preacceleration notice requirement was a condition precedent to suit); *Accetturo*, 2016 IL App (1st) 152783, ¶ 33 (same). Where a contract contains express conditions precedent, strict compliance with those conditions is required, and "[c]ourts will enforce express conditions precedent despite the potential for harsh results for the noncomplying party." *Midwest Builder Distributing, Inc. v. Lord & Essex, Inc.*, 383 Ill. App. 3d 645, 668 (2007) (citing *Dodson v. Nink*, 72 Ill. App. 3d 59, 64 (1979) ("It is well established

- 7 -

that where a contract contains a condition precedent, the contract does not become enforceable or effective until the condition is performed or the contingency occurs.")).

¶ 35    With regard to presuit notice requirements in foreclosure cases, courts have held that dismissal of an action is not warranted where a defect in notice is merely "technical" and does not prejudice defendant (*Aurora Loan Services, LLC v. Pajor*, 2012 IL App (2d) 110899, ¶ 27; *Bank of America, N.A. v. Luca*, 2013 IL App (3d) 120601, ¶ 15), but dismissal is warranted where the notice is lacking in substance (see *Accetturo*, 2016 IL App (1st) 152783, ¶ 42). Thus, for instance, in *Pajor*, 2012 IL App (2d) 110899, ¶ 8, plaintiff sent the requisite presuit grace-period notice but did so before it was formally the assignee of the mortgage. Under those circumstances, we held that plaintiff fulfilled all "substantive requirements" and dismissal of the action was not required. *Id.* ¶ 25. Similarly, in *Luca*, 2013 IL App (3d) 120601, defendants Sergiu and Elena Luca mortgaged their home. Prior to suit, plaintiff sent the required grace-period notice but erroneously addressed it only to Sergiu and not to Elena. *Id.* ¶ 3. We held that this technical error did not warrant vacatur of the ensuing judgment of foreclosure and sale because (1) the record showed that Elena had actual knowledge of the grace-period notice and (2) defendants did not allege any other deficiencies in the notice. *Id.* ¶ 17.

¶ 36    By contrast, in *Accetturo*, 2016 IL App (1st) 152783, plaintiff's failure to comply with preacceleration notice requirements divested it of the right to file a mortgage foreclosure action. The mortgage at issue in *Accetturo* contained a preacceleration notice clause nearly identical to the one in the present case. Prior to suit, the plaintiff bank sent five demand letters to the defendant, variously stating that the loan was " 'seriously delinquent' " and urging her to call the bank to "resolve the matter" (*id.* ¶ 6), but none of the letters strictly complied with the terms of the mortgage. In particular, the letters did not provide defendant the requisite 30 days to cure the default, they did not advise her that failure to cure the default might result in acceleration and foreclosure, and the final letter described the note as already being accelerated. *Id.* ¶¶ 39-41.

¶ 37    The bank filed a mortgage foreclosure action against defendant, and the trial court granted summary judgment for the bank, finding that the bank's demand letters constituted sufficient notice. *Id.* ¶ 16. In denying defendant's motion for reconsideration, the trial court reiterated its stance that the demand letters " 'unquestionably' " complied with " 'the critical portions' " of the mortgage's preacceleration clause. *Id.* ¶ 19.

¶ 38    On appeal, we reversed, finding the trial court's ruling on the issue of notice to be against the manifest weight of the evidence. *Id.* ¶ 42. We explained that "most of the information that [the bank] was mandated by paragraph 21 to provide was missing from the five letters" and, therefore, the omission was "more than a technical defect." *Id.* We additionally held that the bank's failure to comply with the preacceleration notice requirements divested it of the right to file a foreclosure action. *Id.* ¶ 47. Accordingly, we reversed the trial court's grant of summary judgment for the bank. *Id.* ¶ 55.

¶ 39    We find *Accetturo* analogous to the present case. (Notably, AAM does not reference *Accetturo* in its brief, much less make any attempt to distinguish it.) As in *Accetturo*, it is apparent that all four of AAM's demand letters were severely deficient in substance. The first letter did not state the overdue amount, much less give Cruz a 10-day period to pay that amount to avoid default. Rather, it stated that Cruz owed the entire outstanding principal, as if the note had already been accelerated. The second and third letters were even more deficient: they referred generically to "this debt" and "your account" but made no reference to the amount of

the debt and did not provide any grace period for repayment. The fourth letter, like the first, described the note as already having been accelerated since it asserted that the entire outstanding principal was "due and owing" and demanded that Cruz pay the entire sum (not just the overdue payments) within 14 days to avoid litigation. These are not mere technical deficiencies; rather, AAM failed to provide most of the information required under the contract.[2] Thus, we find that AAM's letters, whether viewed separately or together, were insufficient to meet the contractual conditions precedent to default and acceleration.

¶ 40 Similarly, AAM's complaint was deficient as a notice of default and acceleration since it neither advised Cruz of the overdue payment amount nor gave a grace period to pay that amount, but sought the full accelerated balance from him. Thus, under *Accetturo*, we find that the trial court's finding that the complaint complied with the conditions precedent in the note was against the manifest weight of the evidence. Moreover, AAM's failure to provide Cruz with the contractually required notices prior to default and acceleration divested AAM of the right to file this breach of contract action. See *id.* ¶ 50; see also *Midwest Builder Distributing*, 383 Ill. App. 3d at 668 ("[c]ourts will enforce express conditions precedent despite the potential for harsh results for the noncomplying party").

¶ 41 As a final argument, AAM asserts that Cruz could have chosen to pay his outstanding monthly payments at any time between service of the complaint on April 14, 2014, and the trial court's entry of judgment on December 3, 2018. This argument only serves to highlight the inadequacy of the complaint as notice of default and acceleration. If AAM had given Cruz proper notice under section 4(B), Cruz would have had an incentive to make the missing payments within the grace period in order to avoid default and acceleration. Instead, AAM disregarded the notice provisions and filed a premature lawsuit seeking the full accelerated amount. Under those circumstances, with no grace period, it is unsurprising that Cruz did not make the missing payments during the pendency of the litigation—particularly since he had a meritorious defense to the action, *i.e.*, AAM's failure to comply with the terms of the very note it is trying to enforce.

¶ 42                                    CONCLUSION
¶ 43 AAM failed to give the required notice to Cruz before declaring default and accelerating the note. Accordingly, we reverse the trial court's grant of judgment in favor of AAM.

¶ 44 Reversed.

---

[2]Additionally, AAM failed to send the letters by certified mail as required by the note. Although this is arguably a "technical" defect as in *Pajor* and *Luca*, we need not decide the legal effect of this particular defect since the letters are also clearly deficient in substance.