NOTICE

Decision filed 08/03/21. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2021 IL App (5th) 200383-U

NO. 5-20-0383

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE

This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

| | | |
|---|---|---|
| JOHN GORDON, d/b/a Village of Ridgway Wastewater Treatment, | ) ) ) | Appeal from the Circuit Court of Williamson County. |
| Plaintiff-Appellant, | ) ) | |
| v. | ) ) | No. 19-L-113 |
| LANDFILL, LLC, | ) ) | Honorable Jeffrey A. Goffinet, |
| Defendant-Appellee. | ) | Judge, presiding. |

_____

PRESIDING JUSTICE BOIE delivered the judgment of the court.
Justices Moore and Vaughan concurred in the judgment.

**ORDER**

¶ 1    *Held*: We affirm the circuit court's grant of summary judgment in favor of defendant in an action for breach of contract where plaintiff failed to perform a condition precedent of the contract.

¶ 2    Plaintiff, John Gordon, doing business as Village of Ridgway Wastewater Treatment (Gordon), filed suit against defendant, Landfill, LLC (Landfill), for breach of contract. Gordon alleged in his amended complaint that Landfill breached the contract executed by the parties on February 1, 2016 (2016 contract) by failing to pay monies due and owing to Gordon under the contract for services rendered regarding the disposal of wastewater (known as "leachate"). Gordon filed a motion for summary judgment and

1

Landfill filed a cross-motion for summary judgment. The circuit court granted summary judgment in favor of Landfill. Gordon now appeals the judgment of the circuit court arguing that the term of the contract which the circuit court found to be material was not material. Gordon also argues that Landfill had not suffered any injury and, as such, it cannot claim that Gordon breached the 2016 contract. Finally, Gordon argues that the circuit court's judgment resulted in an illegal penalty against Gordon. For the following reasons, we affirm the judgment of the circuit court.

¶ 3                                    BACKGROUND

¶ 4     Gordon is a registered engineer doing business as Village of Ridgway Wastewater Treatment in Southern Illinois. Under an agreement made with the Village of Ridgway, Illinois, Gordon was authorized to install and maintain a storage tank near the Village of Ridgway's sewage treatment plant (treatment plant) for the purpose of facilitating the transfer of leachate from the storage tank to the treatment plant.

¶ 5     Landfill owns and operates the West End Disposal Facility (West End), which is a landfill that is permitted to receive solid waste for disposal. The solid waste at West End generates leachate which periodically needs to be transported to a treatment plant for disposal. Landfill contracted with Maier's Tidy Bowl to transport the leachate from West End to Gordon's storage tank pursuant to the contract between Gordon and Landfill known as the "Leachate Disposal Agreement."

¶ 6     The Leachate Disposal Agreement was first executed in 2001 and the parties renewed the contract on February 1, 2016 (2016 contract). In relevant part, the 2016 contract states that:

2

"WHEREAS, [Gordon] operates a Wastewater Disposal Facility (WDF); and

\*\*\*

1. LANDFILL may, at its own expense, deliver leachate via truck to WDF.

\*\*\*

2. Leachate shall be discharged directly from tank truck to a provided and installed leachate storage tank, including a controlled discharge device to allow the leachate to flow to the adjacent influent sewer at the rate not to exceed 30 gallons per minute."

¶ 7     Pursuant to the above provisions, Landfill was permitted to discharge leachate into the storage tank owned by Gordon and Gordon was obligated to accept the leachate into the storage tank for the purpose of controlling the discharge of leachate into the treatment plant. The 2016 contract obligated Landfill to pay Gordon a fee based upon the amount of leachate discharged into the storage tank, as well as a $500 per month fee for its ongoing use. There was also a provision in the contract that provided for an additional fee if the toxicity level of the leachate reached a certain threshold. In pertinent part, the 2016 contract states:

"6. [Gordon] shall bill monthly for leachate discharged at the following rate:

A. Combined BOD and COD,[1] less than 3,000 mg/l - $.02 Per Gallon.

---

[1]BOD (biochemical oxygen demand) and COD (chemical oxygen demand) refer to the concentrations of organic material in untreated domestic wastewater. An example of COD would be manufactured items such as paint products or other chemicals, and an example of BOD would be natural trash products such as leaves, decaying wood, or dead animals. Dr. Brian Kiepper, Understanding Laboratory Wastewater Tests, University of Georgia (June 15, 2021); https://extension.uga.edu/publications (last visited July 12, 2021).

3

B. Landfill shall pay, in addition to the normal disposal fees, an addition Five Hundred Dollars ($500.00) Per Month, for the ongoing use of the WDF.

C. A charge shall be added to the above charges when the combined total of BOD and COD exceeds 3,000 mg/l. This shall be Ten Dollars ($10.00) per 1,000 Gallons for each additional incremental 1,000 mg/l over 3,000 mg/l."

¶ 8    According to Gordon's deposition testimony, sometime in 2001, shortly after the original contract was executed, the Village of Ridgway informed Gordon that the storage tank was unnecessary, and that the leachate could be discharged into the treatment plant without the use of the storage tank. Gordon stated in his deposition that:

"Q. Well, I don't know who changed it yet, but my question was what the storage equipment was. And that was, part of it was the tank, correct?

A. Well, originally, yes, [the Village of Ridgway] proposed a tank there.

Q. Well, there is a tank there, correct?

A. Uh, I don't know if it's still there or not.

Q. Okay. You never used the tank?

A. No.

Q. Okay. You have never monitored the tank?

A. No.

* * *

Q. Okay. Now, when was it that you placed the above-ground storage tank at the village treatment plant?

4

A. I don't ever recall placing the storage tank there. The landfill may have put the storage tank there as part of the original plan when before they started discharging to it, but it may have been used temporarily. But based on the way they were hauling and discharging the leachate to the treatment plant, the village and particularly the operator of the plant decided it would be much better and economical and beneficial to the village to discharge it directly to a manhole at the headworks of the plant.

Q. Okay. So were you involved in those discussions?

A. Yes.

Q. Okay. And who was representing the Landfill, LLC in those discussions not to use the tank? Who from Landfill, LLC?

A. I don't recall. If anybody was there at the time, it would've been Rick Lane."

¶ 9    The affidavit of Rick Lane, attached to Landfill's memorandum of law in support of summary judgment, stated that Lane never discussed or agreed that the storage tank was not to be utilized for the disposal of Landfill's leachate. The affidavit of Brady Stewart, a regional engineer and agent of Landfill, also stated that Landfill never agreed that Gordon's tank was not to be used for leachate hauled from West End and that Landfill was never advised that the storage tank supplied by Gordon was not being used. In June 2019, the treatment plant refused to accept any further leachate from Landfill, and at that time, Landfill become aware that the storage tank was not being used. Landfill canceled the 2016

5

contract on June 10, 2019, and refused to pay Gordon for leachate transported to the treatment plant for the months of March, April, and May 2019.

¶ 10    On August 6, 2019, Gordon filed a breach of contract action in the circuit court against Landfill and later amended his complaint on November 8, 2019. Gordon alleged in his amended complaint that Landfill breached its obligations under the 2016 contract by not paying the March-May 2019 outstanding amounts. On April 14, 2020, Gordon filed a motion for summary judgment seeking judgment in his favor and requesting $127,577.79 in damages for the breach. On October 5, 2020, Landfill brought a cross-motion for summary judgment.

¶ 11    On October 28, 2020, the circuit court conducted a hearing on the parties' motions for summary judgment, and on November 2, 2020, the circuit judge entered a written order granting Landfill summary judgment. The circuit court found that there were no material facts in dispute that would bar summary judgment and that there were no ambiguities in the 2016 contract that would allow the circuit court to consider extrinsic evidence. The circuit court found that the terms of the 2016 contract stated that Landfill may place leachate in the storage tank and that the placement of the leachate in the storage tank then triggered Landfill's obligation to pay Gordon. The circuit court's written order granting summary judgment in favor of Landfill stated, in part, as follows:

"At oral argument, counsel for the Plaintiff suggested that the contract was in the nature of a broker agreement, and Landfill was required to pay a disposal fee for every gallon of leachate it placed in the village wastewater system to Gordon, even if it did not use the tank, as he brokered the deal. Simply, the contract language

6

in no way supports that interpretation. If the parties intended to pay a fee for brokering the deal, they easily could have provided for the same in the contract. It is clear that Gordon was aware his tank was never used, yet he billed for leachate each month. The Court will not interpret the contract as requiring payment for leachate that never reached Gordon's tank. The same analysis applies to the $500 per month payment. The duty to pay, per the contract language, was triggered by 'on-going use.' There was no ongoing use here. Nothing in the contract prohibited Landfill from bypassing Gordon. Gordon is asking the Court to award him payment for leachate he never became responsible for pumping. Gordon's actions took advantage of the taxpayer paid wastewater lagoon to collect a substantial fee for services he never performed."

¶ 12 Gordon now appeals the circuit court's judgment in favor of Landfill arguing that the circuit court erred in finding that the provision requiring discharge into the storage tank was a material term to the contract. Gordon also argues that Landfill had suffered no injury and, as such, Landfill cannot claim that Gordon breached the 2016 contract. Finally, Gordon argues that the circuit court's judgment resulted in the enforcement of an illegal penalty.

¶ 13                                                                    ANALYSIS

¶ 14 Summary judgment is appropriate where the pleadings, affidavits, depositions, admissions, and exhibits on file, when viewed in the light most favorable to the nonmovant, present no issue of material fact and demonstrates that the movant is entitled to judgment as a matter of law. 735 ILCS 5/2-1005(c) (West 2016); *William Blair & Co. v. FI*

7

*Liquidation Corp.*, 358 Ill. App. 3d 324, 333 (2005). Our review of a circuit court's determination of summary judgment is limited to whether the circuit court correctly concluded that no genuine issue of material fact had been raised and, if none was raised, whether judgment as a matter of law was correctly entered. *Diefendorf v. City of Peoria*, 308 Ill. App. 3d 465, 467-68 (1999). We apply a *de novo* standard of review where a case has been decided by a lower court through summary judgment. *Pielet v. Pielet*, 2012 IL 112064, ¶ 30.

¶ 15    In this matter, the circuit court determined that no genuine issue of material fact remained, and neither party challenges that finding on appeal. We also find that no genuine issue of material fact remained that would have barred summary judgment, and therefore, we proceed to determine whether the circuit court's granting of summary judgment in favor of Landfill as a matter of law was correctly entered. In a breach of contract action, the plaintiff has the burden of proving (1) the existence of a binding and enforceable contract, (2) the performance of the contract by the plaintiff, (3) that the defendant breached the contract, and (4) that the plaintiff suffered damages resulting from defendant's breach. *Pepper Construction Co. v. Palmolive Tower Condominiums, LLC*, 2016 IL App (1st) 142754, ¶ 85.

¶ 16    Neither party disputes that the 2016 contract is a binding and enforceable contract. As such, the first element of Gordon's breach of contract claim is established. However, the parties dispute the second element of whether Gordon performed his obligations under the 2016 contract. Gordon acknowledges that the leachate from Landfill was never processed through the storage tank but argues that the storage tank was not a material term

of the contract. According to Gordon, the language regarding the storage tank was only there to protect the treatment plant from being inundated with leachate, and the purpose of the contract was to provide Landfill with a location for disposal of the leachate. Therefore, Gordon argues that the use of the storage tank was not material since it was not fundamental to the contract, and that its lack of use did not defeat the purpose of the contract. Gordon also argues that the storage tank was not a material term of the contract since Landfill suffered no damages from its nonuse.

¶ 17    Landfill argues that the use of storage tank was a material term of the contract since it was a condition precedent to be performed before the remaining contractual obligations, including the payment of fees, became binding. Landfill argues that Gordon is not entitled to the contractual payments because he did not perform his contractual duty to control the discharge of leachate from the storage tank to the treatment plant since no leachate from Landfill was ever discharged into the storage tank. Landfill further argues that the use of the storage tank was not only a condition precedent and a material term of the 2016 contract, but that it was the sole contractual duty Gordon had to perform pursuant to the 2016 contract.

¶ 18    A condition precedent is an act that must be performed or an event that must occur before a contract becomes enforceable or before the contractual obligations of the other party must be performed. *Associates Asset Management, LLC v. Cruz*, 2019 IL App (1st) 182678, ¶ 34. When a contract contains an express condition precedent, strict compliance is required to follow the condition, and courts will enforce the condition despite the potential unfavorable result against the noncomplying party. *Id.* The parties' obligations

under the contract will end in the event a condition precedent is not satisfied. *Vuagniaux v. Korte*, 273 Ill. App. 3d 305, 309 (1995).

¶ 19    The circuit court found that the terms of the 2016 contract permitted Landfill to place leachate in the storage tank and that the placement of the leachate in the storage tank then triggered Landfill's obligation to pay Gordon. As such, the circuit court determined that the placement of the leachate in the storage tank was a condition precedent to Landfill's obligation to pay Gordon, and we agree.

¶ 20    A court's primary objective in construing a contract is to give effect to the intentions of the parties at the time they entered into the contract. *Ancraft Products Co. v. Universal Oil Products Co.*, 100 Ill. App. 3d 694, 697 (1981). Although Gordon argues that Landfill was able to dispose of its unwanted leachate without the use of the storage tank, he fails to cite any term of the 2016 contract that addresses the delivery of the leachate by Landfill to the treatment plant through other means. In 2016, when the parties executed the 2016 contract, Landfill was under the belief that the leachate was being delivered to the storage tank. Gordon, however, was aware at that time that the storage tank was not being used and had not been used since 2001. As such, Gordon could have eliminated any reference to the storage tank, or provided that the use of the storage tank was optional, in the 2016 contract. Gordon could have also, at the time the parties entered the 2016 contract, ensured that the 2016 contract contained provisions concerning fees which applied to leachate delivered by Landfill to the treatment plant through other means. Instead, Gordon knowingly executed the 2016 contract which contained terms related solely to leachate delivered by Landfill to the storage tank. As such, the delivery of leachate to the storage tank was clearly a condition

10

precedent to Landfill's obligation to pay Gordon the contractual fees associated with any such delivery. Therefore, we find that Gordon, by his own admission that the storage tank was never used, failed to meet the condition precedent within the 2016 contract and, as such, Landfill's obligation regarding the contractual fees ended when the condition precedent was not satisfied.

¶ 21   We further find Gordon's argument that the storage tank was not a material term of the 2016 contract unpersuasive. Gordon argues that the storage tank was not a material term since Landfill was still able to dispose of the leachate without the use of the storage tank. A material term is a contractual provision that deals with a significant issue such as price, payment terms, duration, or the duty to be performed. Black's Law Dictionary (Second Pocket ed. 2001). The 2016 contract term in question provided that the leachate would be disposed of through an "installed leachate storage tank, including a controlled discharge device to all the leachate to flow to the adjacent influent sewer at the rate not to exceed 30 gallon per minute." Since the purpose of the 2016 contract is for the disposal leachate, the manner in which the leachate disposal would be conducted is a significant issue since it deals with the duty to be performed by Gordon. Further, as stated above, there are no other terms within the 2016 contract that related to the disposal of leachate by any other means. As such, we find that the storage tank was a material term of the 2016 contract since it deals with the significant issue of the duty to be performed and there are no other terms on which Landfill would be required to pay Gordon a fee for the disposal of the leachate.

11

¶ 22    Gordon also argues that the storage tank was not material since "[m]ost importantly, he found a place where Landfill could take the leachate" and that he paid the Village of Ridgway for disposing of the leachate. Again, Gordon fails to cite to any term within the 2016 contract addressing the obtainment of a leachate disposal location or any obligation of Landfill to pay Gordon a fee for the obtainment of a leachate disposal location. The 2016 contract also did not address any fee payment to the Village of Ridgway for leachate disposal. If the language in a contract is clear and unambiguous, the intention of the parties must be determined solely from the plain language of the contract and a court may not consider extrinsic evidence outside the "four corners" of the document itself. *Owens v. McDermott, Will & Emery*, 316 Ill. App. 3d 340, 344 (2000). Here, the 2016 contract contained no provisions whatsoever relating to the obtainment of a disposal location for Landfill's leachate or Gordon's obligation to pay the Village of Ridgway for the leachate delivered to the storage tank by Landfill. As such, it is irrelevant whether Gordon located a disposal location for Landfill's leachate or whether Gordon was obligated to pay the Village of Ridgway since neither were terms within the "four corners" of the 2016 contract.

¶ 23    Although not specifically argued as an ambiguous term, Gordon states in his reply brief that Landfill has misrepresented the record in this matter by asserting that "WDF" in the 2016 contract is synonymous to the storage tank. Gordon argues that Landfill's assertion is incorrect and states that "WDF" refers to the treatment plant.

¶ 24    A contract term will only be found to be ambiguous if the language is reasonably or fairly susceptible to more than one construction, and the question of whether a contract term is clear or ambiguous is a question of law for the court. *Omnitrus Merging Corp. v.*

12

*Illinois Tool Works, Inc*., 256 Ill. App. 3d 31, 34 (1993). Here, "WDF" clearly refers to the "wastewater disposal facility." As such, the issue is not whether "WDF" is ambiguous but whether the "wastewater disposal facility" is ambiguous. "Wastewater disposal facility" is susceptible to more than one construction, and therefore, we find that it is an ambiguous term. A court may use extrinsic evidence to aid in interpreting an ambiguous term of a contract. *Gomez v. Bovis Lend Lease, Inc.*, 2013 IL App (1st) 130568, ¶ 14.

¶ 25    The 2016 contract states that: "Whereas, [Gordon] *operates* a Wastewater Disposal Facility (WDF); ***." (Emphasis added.) The contract between Gordon and the Village of Ridgway concerns the "discharge from GORDON's tank into the RIDGWAY sewage treatment facility" and "WDF" is not an abbreviation used in that contract. The contract between Gordon and Village of Ridgway further contained a provision which stated that Gordon "has no authority, express or implied, to represent himself as an agent of RIDGWAY in any capacity whatsoever." The affidavit of James Rider, the supervisor of the treatment plant, states that Gordon was never an employee of the Village of Ridgway and had never operated the treatment plant. As such, "WDF" could not refer to the treatment plant since Gordon had no authority to "operate" the treatment plant and the storage tank was the only resource for which Gordon could "operate" and contract concerning its use. As such, we find that the "wastewater disposal facility" as synonymous to the storage tank and find no misrepresentation of the record by Landfill.

¶ 26    Next, Gordon argues that Landfill has suffered no injury and, as such, this court should prohibit Landfill from claiming a breach by Gordon which caused no injury or only a minor, trivial injury to excuse Landfill's own performance. In support of his argument,

13

Gordon cites to *Pacini v. Regopoulos*, 281 Ill. App. 3d 274 (1996), and states that the doctrine of *de minimis non curat lex* should be applied in this matter. The doctrine of *de minimis non curat lex* provides that if the failure of performance causes such slight harm, the courts will give no remedy and it is proper to say that there has been no breach of duty. *Id*. at 279. Gordon's reliance on *Pacini* is misplaced since the doctrine of *de minimis non curat lex* applied by the *Pacini* court related to the plaintiff's claim of damages. *Id*. at 280-81. The *Pacini* court found that it was proper to say that the defendant did not breach the term of the contract at issue because the defendant's nonperformance concerning a term in the contract resulted in such a slight harm to the plaintiff. In this matter, Gordon's damages would not have been *de minimis* if the circuit court had determined that Landfill had breached the 2016 contract since Gordon's prayer for relief requested damages in excess of $100,000. Further, we cannot apply the doctrine of *de minimis non curat lex* to Gordon's nonperformance since Landfill is defending this matter on a position that Gordon failed to perform a condition precedent in the 2016 contract and not on a cross-claim of breach of contract that would require Landfill to demonstrate damages. As such, we find that the doctrine of *minimis non curat lex* is not applicable to the case at bar.

¶ 27    Finally, Gordon argues that an injustice would result if Landfill was relieved of its obligation to pay any costs associated with the leachate disposed of in the months of March, April, and May 2019. Again, Gordon argues that the purpose of the contract was to provide a place to take Landfill's leachate and that Gordon provided such a place. It is Gordon's position that how the leachate got into the treatment plant is irrelevant and that the disposal of leachate cannot be undone as the leachate has already been treated and cannot be

14

returned to Landfill. As such, Gordon argues that Landfill would receive a benefit from Gordon without having to pay for that benefit.

¶ 28   Gordon cites to *Rogers v. Balsley*, 240 Ill. App. 3d 1005 (1993), in support of his argument. The *Rogers* court held that "a party will be relieved from a technical forfeiture if injustice would result from its enforcement." *Id*. at 1011. The issue in the *Rogers* case was whether a party had received the required notice set forth in a term of the contract. The *Rogers* court found that the notice provision was to ensure that the party was informed and that since the party had received notice through their attorney, the notice was delivered although it was not sent to the party's home address. *Id*.

¶ 29   We do not find the *Rogers* case instructive in this matter because the *Rogers* case dealt with a minor, technical portion of a term of a contract and not a condition precedent. As discussed above, we have determined that the use of the storage tank was a condition precedent of the 2016 contract. Therefore, we find *Midwest Builder Distributing, Inc. v. Lord & Essex, Inc.*, 383 Ill. App. 3d 645, 668 (2007), to be instructive. The *Midwest* court found that:

> "[U]nder the text of the subcontractor agreements, [defendant] has no duty to pay for any goods where the purchase order documents have not been submitted by [plaintiff]. Evidence of actual delivery, such as the invoices and other accounting documents that [plaintiff] presented at trial, is not sufficient to establish liability as long as the condition [precedent] remains unsatisfied." *Id.*

¶ 30   The *Midwest* court further noted that when a contract contains an express condition precedent, strict compliance is required to follow the condition, and courts will enforce the

15

condition despite the potential unfavorable result against the noncomplying party. *Id*. Here, we have determined that the 2016 contract contained a condition precedent, and that Gordon was the noncomplying party. As the noncomplying party, Gordon cannot now complain of an unfavorable result.

¶ 31 Based on the above, we find that the circuit court properly determined that no genuine issue of material fact had been raised and that summary judgment in favor of Landfill as a matter of law was correctly entered.

¶ 32                                  CONCLUSION

¶ 33 For the foregoing reasons, we affirm the judgment of the circuit court granting Landfill's motion for summary judgment.


¶ 34 Affirmed.