FIFTH DIVISION

FILED: 8/22/97

1-96-1505

) APPEAL FROM THE 

NETTIE MITCHELL, ) CIRCUIT COURT OF

) COOK COUNTY

Plaintiff-Appellant, )

)

v. )

)

NORMAN JAMES CONSTRUCTION CO., INC., )

and NORMAN JAMES and ST. PAUL FEDERAL ) HONORABLE

BANK FOR SAVINGS, ) RENE GOIER,

) JUDGE PRESIDING.

Defendants-Appellees. )

JUSTICE HOFFMAN delivered the opinion of the court:

The plaintiff, Nettie Mitchell, appeals from orders of the circuit court granting judgment on the pleadings in favor of St. Paul Federal Bank for Savings (St. Paul) on count V of her second-amended complaint, striking and dismissing counts II, III and IV of that complaint which purported to allege actions against Norman James Construction Co. (hereinafter "James Construction") and Norman James (hereinafter "James"), and denying her leave to file a third-amended complaint.  For the reasons which follow, we affirm in part, reverse in part, vacate in part and remand this action to the circuit court for further proceedings.

The plaintiff filed a verified six-count, second-amended complaint (hereinafter "complaint") against James Construction; its president, James; St. Paul; and St. Paul's employee, Carl Malone.  The allegations underlying the complaint were as follows.  

The plaintiff operated a day-care center out of her residence in Oak Park.  In early 1992, the plaintiff decided to build an addition to her residence in order to accommodate her expanding business.  Seeking financing for the project, she went to St. Paul and discussed a home improvement loan with a loan officer, Malone.  During the course of these discussions, Malone represented that he had special knowledge regarding certain home improvement contractors, particularly James and James Construction. Malone assured the plaintiff that he had recommended James Construction and James to other homeowners who had been satisfied with their work.  According to the complaint, Malone knew or reasonably believed that each of these statements and representations were false.  In alleged reliance upon Malone's advice, the plaintiff entered into a verbal construction contract with James Construction in May 1992, agreeing to pay James $23,900 to build an addition to her home.

The plaintiff alleged that she performed under her contract with James Construction until July 24, 1992, when, after a site inspection, an Oak Park building inspector refused to approve the construction by reason of its noncompliance with the architect's plans and the Oak Park building code.  The complaint alleged that the construction done was completely worthless, unsafe and unusable for its intended purpose, and that it would have to be entirely removed and replaced.

Count I of the complaint charged James Construction with breach of contract; count II charged James Construction and James, individually, with common law fraud and misrepresentation; count III charged James Construction and James, individually, with violations of the Consumer Fraud and Deceptive Business Practices Act (815 ILCS 505/1 
et
 
seq
. (West 1994)) and the Home Repair Fraud Act (815 ILCS 515/1 
et
 
seq
. (West 1994)); and count IV sought the release of a contractor's lien which James Construction had attached to the plaintiff's property on July 23, 1992.  Count V charged St. Paul with vicarious liability for Malone's fraud in recommending James and James Construction, and with negligent failure to supervise Malone in the performance of his duties.  Finally, count VI was an action against Malone for misrepresentation.  

Count I was dismissed after the claim pleaded therein was discharged in a bankruptcy proceeding filed by James Construction.  Count VI against Malone was voluntarily dismissed by the plaintiff pursuant to section 2-1009 of the Code of Civil Procedure (Code) (735 ILCS 5/2-1009 (West 1994)).  This appeal deals only with the trial court's disposition of counts II, III, IV and V of the complaint, and its denial of the plaintiff's motion for leave to file a third-amended complaint.

We will first address the trial court's order of June 13, 1995, which granted judgment on the pleadings in favor of St. Paul on count V of the complaint.  As to this order, the plaintiff argues 1) that the trial court erred in granting judgment on the pleadings in favor of a defendant that had never answered the complaint, and 2) that count V stated good and sufficient causes of action against St. Paul.

Several times in her brief before this court, the plaintiff asserts that judgment on the pleadings in favor of a defendant who has not answered a complaint is procedurally inappropriate.  We disagree.

Section 2-615(e) of the Code provides that "[a]ny party may seasonably move for judgment on the pleadings."  735 ILCS 5/2-615(e) (West 1994).  Unlike the Federal Rules of Civil Procedure which provide that a party may move for judgment on the pleadings after the pleadings are closed (Fed. R. Civ. P. 12(c)), section 2-615(e) of the Code contemplates the consideration of a defendant's motion for judgment on the pleadings on a complaint only, without the defendant having first filed an answer.  
Pollack v. Marathon Oil Co.
, 34 Ill. App. 3d 861, 867, 341 N.E.2d 101 (1976).  Although a judgment on the pleadings is ordinarily considered by the court after the parties are at issue, it may be appropriate in circumstances where no answer has been filed and the only ground therefore is that the allegations of the complaint are insufficient to state a cause of action.  
Mitchell v. Waddell
, 189 Ill. App. 3d 179, 182, 544 N.E.2d 1261 (1989).  The plaintiff's arguments to the contrary on this procedural question are the same as those made to and rejected by this court in 
Pioneer Bank & Trust Co. v. Austin Bank
, 279 Ill. App. 3d 9, 13, 664 N.E.2d 182 (1996), and we find no need to analyze the issue further.  The procedural history of this case leading up to the trial court's order of June 13, 1995, is, however, worthy of note.

On April 6, 1995, in lieu of an answer to count V of the complaint, St. Paul apparently filed a motion to dismiss under section 2-615 of the Code (735 ILCS 5/2-615 (West 1994)).   We say apparently because a copy of that motion was not included in the record on appeal.  However, from a reading of the plaintiff's response to that motion and from the entries set forth on the court's official docket (half-sheet), it is clear that St. Paul moved to dismiss count V contending that the plaintiff had 1) failed to properly allege a cause of action based upon the doctrine of 
respondeat superior
, and 2) failed to adequately plead a cause of action for misrepresentation against its employee, Malone, whose conduct formed the basis of the plaintiff's claim against St. Paul.  The first mention of a judgment on the pleadings in favor of St. Paul on count V of the complaint is found in the draft order entered by the trial court on June 13, 1995.  However, the seeming disparity in the relief requested by St. Paul, dismissal of count V pursuant to section 2-615 of the Code for failure to state a cause of action, and the relief granted by the trial court, judgment on the pleadings in favor of St. Paul, forms no basis for reversal under the facts of this case.

When dismissal is sought pursuant to section 2-615 of the Code, the only issue before the court is whether the complaint or a particular count thereof states a cause of action upon which relief can be granted.  
Burdinie v. Village of Glendale Heights
, 139 Ill. 2d 501, 565 N.E.2d 654 (1990).  The very same inquiry is presented when a motion for judgment on the pleadings is filed by a defendant prior to the filing of an answer.  
Mitchell
, 189 Ill. App. 3d at 181-82; 
Pollack
, 34 Ill. App. 3d at 867.  Consequently, the granting of judgment on the pleadings in favor of a defendant who has never answered the plaintiff's complaint is the functional equivalent of dismissing the complaint for failure to state a cause of action against that defendant.

When the legal sufficiency of all or a part of a complaint is challenged, all well-pleaded facts in the count of the complaint under attack are taken as true (
Burdinie
, 139 Ill. 2d at 505), and all reasonable inferences favorable to the plaintiff must be drawn from those facts (
Mt. Zion State Bank & Trust v. Consolidated Communications
, 169 Ill. 2d 110, 115, 660 N.E.2d 863 (1995)).  In reviewing the sufficiency of a complaint or a portion thereof, the court disregards all conclusions of law or fact unsupported by specific factual allegations upon which such conclusions rest.  
Burdinie
, 139 Ill. 2d at 505.  Guided by these standards, we have conducted a 
de
 
novo
 review of count V of the complaint (see 
Metrick v. Chatz
, 266 Ill. App. 3d 649, 651-52, 639 N.E.2d 198 (1994)) to determine whether that count states a cause of action against St. Paul.

It is well-settled that under the doctrine of 
respondeat
 
superior
, an employer may be liable for the negligent, wilful, malicious, or even criminal acts of its employees when such acts are committed in the course of employment and in furtherance of the business of the employer.  
Randi F. v. High Ridge YMCA
, 170 Ill. App. 3d 962, 964, 524 N.E.2d 966 (1988).  The employer is not liable, however, where the acts were performed solely for the employee's benefit or were different from the type of acts the employee was authorized to perform.  
Wright v. City of Danville
, 174 Ill. 2d 391, 405, 675 N.E.2d 110 (1996), citing Restatement (Second) of Agency §228(2) (1958); 
Randi F.
, 170 Ill. App. 3d at 964.  The fact that the acts also may have been beneficial to the employee does not automatically defeat a claim for vicarious liability; the employer may be held liable if its employee's actions were prompted only in part by a purpose to further the employer's business.  
Bryant v. Livigni
, 250 Ill. App. 3d 303, 315, 619 N.E.2d 550 (1993); 
Sunseri v. Puccia
, 97 Ill. App. 3d 488, 493, 422 N.E.2d 925 (1981).  The foreseeability to the employer that the employee's duties could give him occasion to act in the manner he did also is a relevant consideration.  See 
Rubin v. Yellow Cab Co.
, 154 Ill. App. 3d 336, 507 N.E.2d 114 (1987); 
Wilson v. Clark Oil & Refining Corp.
, 134 Ill. App. 3d 1084, 481 N.E.2d 840 (1985).

Count V alleged that Malone's recommendation of James Construction occurred during normal business hours, on the premises of St. Paul, and in the course of several discussions between the plaintiff and Malone regarding her loan.  See 
Giraldi v. Lamson
, 205 Ill. App. 3d 1025, 563 N.E.2d 956 (1990); 
Randi F.
, 170 Ill. App. 3d at 965.  However, the plaintiff failed to allege that Malone's conduct was in furtherance of his duties as a loan officer.  Additionally, she failed to set forth any facts suggesting how Malone's recommendation of a construction contractor could in any manner advance St. Paul's business as a lender.  Count V does not state that the plaintiff solicited Malone's advice or that she was in need of a "good price" in order to go forward with the project.  Nor does the complaint suggest that Malone's referral had any bearing upon the plaintiff's decision to obtain the loan from St. Paul.  Thus, count V fails to allege facts which, if true, could support the inference that Malone's representations and referral were in furtherance of St. Paul's business, rendering St. Paul liable for Malone's conduct under the doctrine of 
respondeat
 
superior
.  Our finding on this issue is equally applicable to the plaintiff's argument that St. Paul could be held vicariously liable for Malone's representations under an estoppel theory.

Alternatively, the plaintiff argues that count V of her complaint properly alleges that St. Paul, through Malone, engaged in constructive fraud by recommending James Construction.  Constructive fraud is any act, statement or omission which amounts to a positive fraud or is construed as such because of its detrimental effect upon public interests and public or private confidence.  
In re Gerard
, 132 Ill. 2d 507, 528-29, 548 N.E.2d 1051 (1989), quoting 
In re Estate of Neprozatis
, 62 Ill. App. 3d 563, 568, 378 N.E.2d 1345 (1978).  The plaintiff may establish constructive fraud without showing actual dishonesty or an intent to deceive.  
Gerard
, 132 Ill. 2d at 528.

Most frequently, claims for constructive fraud arise where there has been a breach of a fiduciary relationship.  
Kurti v. Fox Valley Radiologists, Ltd.
, 124 Ill. App. 3d 933, 464 N.E.2d 1219 (1984); see also 
Gerard
, 132 Ill. 2d at 528-29.  Although, as the plaintiff points out, courts have found that an action may lie even in the absence of a fiduciary relationship (see 
Neprozatis
, 62 Ill App. 3d 563), the parties in such situations must have engaged in more than a mere arm's length transaction.  
State Security Insurance Co. v. Frank B. Hall & Co.
, 258 Ill. App. 3d 588, 630 N.E.2d 940 (1994).  Rather, constructive fraud occurs where one party is clearly dominant, "'either because of superior knowledge of the matter derived from *** overmastering influence on the one side, or from weakness, dependence, or trust justifiably reposed on the other side***.'"  
Neprozatis
, 62 Ill. App. 3d at 569, quoting 17 Am. Jur. 2d 
Contracts
 §154 (1964); see also 
Lagen v. Balcor Co.
, 274 Ill. App. 3d 11, 22-23, 653 N.E.2d 968 (1995); 
Singer v. Brookman
, 217 Ill. App. 3d 870, 578 N.E.2d 1 (1991).  Factors to be considered in determining the existence of a confidential relationship include the degree of kinship of the parties; any disparity in age, health, and mental condition; differences in education and business experience between the parties; and the extent to which the allegedly servient party entrusted the handling of her business affairs to the dominant party, and whether the dominant party accepted such entrustment.  
State Security
, 258 Ill. App. 3d at 597-98; 
Santa Clause Industries, Inc. v. First National Bank
, 216 Ill. App. 3d 231, 238, 576 N.E.2d 326 (1991).

The complaint in this case fails to allege the existence of either a fiduciary or confidential relationship between the plaintiff and St. Paul.  As a matter of law, a conventional mortgagor-mortgagee relationship standing alone does not give rise to a fiduciary or confidential relationship.  
La Throp v. Bell Federal Savings & Loan Ass'n
, 68 Ill. 2d 375, 391, 370 N.E.2d 188 (1977); see also 
Mid-American National Bank v. First Savings & Loan
, 161 Ill. App. 3d 531, 515 N.E.2d 176 (1987).  Nonetheless, a confidential relationship may be found to exist where one party, due to a close relationship, is alleged to have relied very heavily on the judgment of another (
Mid-American National Bank
, 161 Ill. App. 3d at 538).

In a conclusory fashion, count V alleges that "by virtue of the relationship between the plaintiff and St. Paul and ***  the trust that the plaintiff reposed in MALONE due to his position and his business experience and whereby MALONE gained superiority and influence over the plaintiff, a fiduciary relationship existed between the plaintiff and St. Paul," from which St. Paul benefitted.  Count V fails to allege facts indicating that the plaintiff, in a subservient position, reposed her trust in St. Paul with regard to construction contractors, or that St. Paul accepted such trust.  Even accepting as true the plaintiff's conclusory allegation that she relied upon Malone's recommendation based on his "position and business experience", she has still failed to allege any facts to support the inference that Malone was acting for the benefit of St. Paul when he recommended James Construction.  Count V merely alleges that the plaintiff went to St. Paul for the purpose of obtaining a home equity loan, and while there, she was offered Malone's gratuitous recommendation regarding a particular builder of whom he claimed to have knowledge.  These allegations simply do not raise an inference that St. Paul accepted the entrustment of the plaintiff's decision as to which builder to engage, and therefore are insufficient to support a cause of action for constructive fraud.

Next, the plaintiff argues that although she intended to plead an action against St. Paul for constructive fraud based on the doctrine of 
respondeat
 
superior
, count V also contained sufficient allegations to support causes of action for a "violation of the Residential Mortgage License Act of 1987 and other portions of the Illinois Banking and Finance statutes and negligent supervision of an employee."  While we agree with the plaintiff's contention that no complaint should be dismissed on the pleadings which states a cause of action, even one not intended to be pleaded by the plaintiff (
City of North Chicago v. North Chicago News, Inc.
, 106 Ill. App. 3d 587, 594, 435 N.E.2d 887 (1982)), we disagree that count V adequately alleges any of the causes of action suggested by the plaintiff.

The only allegation in count V in support of an action for negligent supervision against St. Paul is the plaintiff's charge that "St. Paul knew or should have known" that Malone had recommended James and James Construction to the plaintiff and other homeowners seeking loans from St. Paul.  However,  conclusory allegations that a defendant "knew or should have known" of a condition or an event, without allegations of specific facts as to how or why a defendant knew or should have known, are insufficient to state a claim for negligence.  See, 
e.g.
, 
Lawson v. City of Chicago
, 278 Ill. App. 3d 628, 662 N.E.2d 1377 (1996); 
Washington v. Chicago Board of Education
, 204 Ill. App. 3d 1091, 1094, 562 N.E.2d 541 (1990).

As to the plaintiff's argument that count V states a cause of action against St. Paul for "violation of the Residential Mortgage License Act of 1987 and other portions of the Illinois Banking and Finance statutes," we note that count V fails to reference any such statutes.  As a consequence, no breach of any statutory duty on the part of St. Paul was alleged by the plaintiff, and no statutory cause of action was pleaded.  See 134 Ill. 2d R. 133(a); 
Ebert v. Thompson
, 282 Ill. App. 3d 385, 668 N.E.2d 184 (1996).

Ordinarily, when faced with a plaintiff's attempt to state a cause of action supported only by conclusory allegations, a court will strike the complaint or a portion thereof and afford the plaintiff an opportunity to amend.  See 
Mitchell
, 189 Ill App. 3d at 183.  In this case, however, count V of the complaint was the plaintiff's second attempt to plead a cause of action against St. Paul.  In response to a motion filed by St. Paul to strike the plaintiff's prior complaint, she moved for and was granted leave to amend, resulting in the filing of the complaint which is the subject of this appeal.  Further, after the trial court entered judgment in favor of St. Paul on June 13, 1995, the plaintiff did not seek leave to again amend her complaint against St. Paul, even though the June 13 order remained interlocutory until March 21, 1996, when the last pending claim in this action was dismissed.  We take the plaintiff's failure in this regard to be an election to stand on count V of the complaint.  See 
Goldstein v. Lustig
, 154 Ill. App. 3d 595, 507 N.E.2d 164 (1987).

In sum, we find that count V fails to allege sufficient facts to support a cause of action against St. Paul on any theory suggested by the plaintiff.  We accordingly affirm the judgment entered on June 13, 1995, in favor of St. Paul.

We next address the propriety of the dismissal of counts II, III and IV of the complaint on July 13, 1995, and the denial of the plaintiff's motion to file a third-amended complaint on September 12, 1995.

On June 13, 1995, when the court entered judgment in favor of St. Paul on count V of the complaint, counts I, II, III, IV, and VI remained pending and undetermined.  As stated earlier, count I was an action against James Construction for breach of contract; count II was an action for fraud against James Construction and James, individually; count III alleged that James Construction and James violated the Consumer Fraud and Deceptive Business Practices Act (815 ILCS 505/1 
et
 
seq
. (West 1994)) and the Home Repair Fraud Act (815 ILCS 515/1 
et
 
seq
. (West 1994)); count IV was a quiet title action seeking the release of a contractor's lien recorded by James Construction against and upon the title to the plaintiff's residence; and count VI was an action against Malone for fraud.  In addition to granting judgment in favor of St. Paul, the order of June 13, 1995, set this matter for trial against the remaining defendants on July 13, 1995.

On July 7, 1995, the plaintiff filed a motion for default against James Construction and James for having failed to answer or otherwise plead to the complaint.  On July 10, 1995, the plaintiff filed a motion to voluntarily dismiss her action against Malone pursuant to section 2-1009 of the Code (735 ILCS 5/2-1009 (West 1994)), and noticed her motion for hearing on July 13, 1995.  On July 12, 1995, James Construction and James filed an answer to counts I, II, III and IV of the complaint.  The record before us fails to reflect that the plaintiff's motion for default against James Construction and James was ever noticed for hearing, or that these defendants obtained leave of court to file their tardy answer on July 12.

When this matter came before the court on July 13, 1995, the court granted the plaintiff's motion to voluntarily dismiss Malone.  At that same hearing, the court was advised that James Construction had filed for bankruptcy.  Thereafter, the court and counsel engaged in a discussion as to whether any portion of the case could proceed to trial.  The plaintiff's counsel pointed out that James Construction's bankruptcy proceeding had no effect upon the claims pending against James personally.  When the court questioned the plaintiff's ability to establish personal liability on the part of James for acts committed as an agent for James Construction, counsel for James commented that the plaintiff's complaint was confusing.  The record reflects that the court examined the complaint and, 
sua
 
sponte
, struck counts II, III and IV, stating "there is nothing in there but a sheer allegation of willful and wanton misbehavior".  The court also indicated that proceedings on count I would be stayed.  When the plaintiff's counsel noted that the court struck counts II, III and IV in the absence of any motion by the defendants, the court responded that James's counsel had made an oral motion, and that the counts were being stricken under section 2-615 of the Code for failure to state a cause of action.  The court's order of July 13, 1995, struck and dismissed counts II, III and IV of the complaint.

The transcript of the proceedings before the trial court on July 13, 1995, fails to reveal any oral motion on the part of James's counsel to dismiss the plaintiff's complaint for failure to state a cause of action.  To be sure, counsel did suggest that the complaint was confusing and lacked clarity as to the theory under which the plaintiff sought recovery from James personally, but that comment was made in the context of a discussion relating to the propriety of proceeding to trial against James while James Construction's bankruptcy was pending.

There is little question that a trial court has the authority, on its own motion, to strike a complaint that is insufficient in substance or fails to sufficiently define the issues, and order that other pleadings be prepared.  See 735 ILCS 5/2-612(a) (West 1994).  The trial court on its own motion also possesses the authority to dismiss any claim that fails to state a cognizable cause of action.  
Rhodes v. Mill Race Inn, Inc.
, 126 Ill. App. 3d 1024, 1028, 467 N.E.2d 915 (1984).  In this case, the latter rule is inapplicable, as counts II, III and IV do in fact assert claims recognized at law.

Our reading of counts II and III of the complaint reveals that they are conclusory and lack the specificity required of claims sounding in fraud or a violation of the Consumer Fraud and Deceptive Business Practices Act (815 ILCS 502/2 
et
 
seq
. (West 1994)).  See 
Board of Education v. A, C and S, Inc.
, 131 Ill. 2d 428, 457, 546 N.E.2d 580 (1989); 
Saladino v. Team Chevrolet, Inc.
, 242 Ill. App. 3d 735, 611 N.E.2d 583 (1993).  Both counts generally allege that James represented that the work performed at the plaintiff's residence would conform to the architect's plans; that the work that was done failed to so conform; that James "knowingly, intentionally, willfully and maliciously concealed" that nonconformance; and that in reliance upon James's representations, the plaintiff made periodic payments.  What the plaintiff failed to allege was the manner in which the construction performed at her residence failed to conform to the architect's plans.  The same deficiency existed in count IV, the plaintiff's quiet title action against James Construction.  However, if the trial court determined, as we have, that counts II, III and IV were conclusory and therefore substantively insufficient, it should have invoked its right under section 2-612, struck the counts, and ordered the plaintiff to replead; the counts should not have been dismissed on the court's own motion.

On August 14, 1995, while this action was still pending in the trial court and the order of July 13, 1995, remained interlocutory, the plaintiff filed a motion for leave to file her third-amended complaint against James Construction and James.  A copy of her proposed pleading was attached to the motion and is contained in the record before us.  On September 12, 1995, the trial court denied the plaintiff's motion for leave to amend.

The plaintiff argues that the trial court erred in denying her motion for leave to file her third-amended complaint, contending that any lack of specificity that may have existed in the complaint was remedied by the detailed factual allegations of the proposed third-amended complaint.  We agree.

A trial court has broad discretion in determining whether to allow pleadings to be amended, and its decision will not be disturbed on appeal absent an abuse of that discretion.  
Schenker v. Chicago Title & Trust Co.
, 128 Ill. App. 3d 488, 470 N.E.2d 1264 (1984).  Albeit in another context, the supreme court in 
Loyola Academy v. S & S Roof Maintenance, Inc.
, 146 Ill. 2d 263, 586 N.E.2d 1211 (1992), set out four factors that a trial court should examine in determining whether a party should be granted leave to file an amended complaint.  These factors are: "(1) whether the proposed amendment would cure the defective pleading; (2) whether other parties would sustain prejudice or surprise by virtue of the proposed amendment; (3) whether the proposed amendment is timely; and (4) whether previous opportunities to amend the pleading could be identified."  
Loyola Academy
, 146 Ill. 2d at 273.  Any doubt as to whether a plaintiff should be granted leave to file an amended complaint should be decided in favor of allowance of the amendment.  
Schenker
, 128 Ill. App. 3d at 492.

The second and third factors for consideration identified in 
Loyola
 were easily satisfied in this case.  The plaintiff's proposed third-amended complaint pleaded the same causes of action against James and James Construction as had been pleaded in prior timely-filed complaints.  Consequently, the defendants could not claim surprise or prejudice if the plaintiff had been allowed to file her third-amended complaint.  Further, since the actions pleaded in plaintiff's proposed third-amended complaint arose out of the same transaction or occurrence set up in her prior timely-filed complaints, there can be no argument that her proposed amendment was untimely.  See 735 ILCS 5/2-616(b) (West 1994).  As to the fourth factor for consideration, whether previous opportunities to amend could be identified, suffice it to say that the plaintiff filed her motion for leave to amend her complaint against James and James Construction 32 days after she was first advised that her claims against these defendants were in any way deficient.  The only issue that requires a detailed analysis under the facts of this case is whether the plaintiff's proposed third-amended complaint cured the defects in her prior complaint, thus satisfying the first factor for consideration.

As indicated earlier in our opinion, counts II and III of the plaintiff's complaint were deficient by reason of her failure to allege facts in support of her claims against James Construction and James with the specificity required in actions for fraud and violations of the Consumer Fraud and Deceptive Business Practices Act.  Count IV also was deficient as it set forth mere conclusions that the work performed by James Construction failed to comply with the parties' contract.  By contrast, the plaintiff's proposed third-amended complaint is very specific and alleges facts in support of each element of the causes of action set out therein.

In order to state a claim for fraud, a plaintiff must allege with particularity (1) that the defendant made an untrue statement of material fact; (2) that he knew or believed the statement to be false; (3) that the statement was made to induce the plaintiff to act; and (4) that the plaintiff acted in justifiable reliance upon the statement.  
HPI Health Care Services, Inc. v. Mt. Vernon Hospital, Inc.
, 131 Ill. 2d 145, 165, 545 N.E.2d 672 (1989); 
Redarowicz v. Ohlendorf
, 92 Ill. 2d 171, 441 N.E.2d 324 (1982).  Active concealment of a material fact can also support an action for fraud.  See 
Cotter v. Parrish
, 166 Ill. App. 3d 836, 520 N.E.2d 1172 (1988).  However, a promise to perform an act in the future made by one who intends not to perform is not actionable fraud, unless the false promise of future performance is part of a scheme or device to defraud another of her property.  
HPI
, 131 Ill. 2d at 168; 
Steinberg v. Chicago Medical School
, 69 Ill. 2d 320, 334, 371 N.E.2d 634 (1977); 
Roda v. Berko
, 401 Ill. 335, 338, 81 N.E.2d 912 (1948).

Count II of the plaintiff's proposed third-amended complaint alleges, 
inter
 
alia
, that James, acting on behalf of James Construction, agreed to construct the addition to the plaintiff's residence in accordance with a certain architect's plans, never intending to perform as promised; that the addition was not constructed in accordance with those plans; that James intentionally concealed the fact that the construction did not comply with the plans, and failed to request that village authorities inspect the work that was done, which inspections would have disclosed that the work did not conform to the plans or the applicable village ordinances; that James made his false representations, concealed defective work, and failed to schedule required village inspections, all to induce the plaintiff to enter into the contract in the first instance and to make periodic payments under the contract as work progressed; and that, in reliance upon James's intentional misrepresentations and wilful concealment, the plaintiff both entered into the contract with James Construction and made periodic payments thereunder.  Additionally, this count details with specificity the manner in which the construction failed to conform to the plans.

We believe that the factual allegations of count II of the plaintiff's proposed third-amended complaint more than satisfied the specificity required in order to state a cause of action for fraud, and adequately pleaded a scheme to defraud, rendering James's alleged false promises of future performance actionable.

Having found that count II of the plaintiff's proposed third-amended complaint adequately sets forth a cause of action for fraud against James Construction and James, it follows that count III of that complaint, which incorporates all of the allegations of count II and alleges the business relationship between the parties, adequately states a cause of action against the defendants for a violation of the Consumer Fraud and Deceptive Business Practices Act.  
Siegel v. Levy Organization Development Co.
, 153 Ill. 2d 534, 543, 607 N.E.2d 194 (1992).

Count IV of the plaintiff's proposed third-amended complaint sets forth with particularity the defects in workmanship claimed, and otherwise alleges facts which, if true, support an inference that the lien recorded by James Construction constitutes an invalid cloud on the title to the plaintiff's property.  As such, the count states a good and sufficient cause of action to quiet title.  See generally, 
Yeates v. Daily
, 13 Ill. 2d 510, 150 N.E.2d 159 (1958).

Our review of the plaintiff's proposed third-amended complaint leads us to conclude that it cured any defects existing in counts II, III and IV of her complaint.

In light of the fact that the plaintiff's proposed third-amended complaint satisfied all four factors for consideration outlined in 
Loyola Academy
, 146 Ill. 2d 263, we find that the trial court erred when it denied the plaintiff's motion for leave to amend on September 12, 1995.

For the foregoing reasons, we: 1) affirm the order of June 13, 1995, granting judgment in favor of St. Paul on count V of the complaint; 2) affirm that portion of the order of July 13, 1995, which struck counts II, III and IV of the complaint; 3) vacate that portion of the order of July 13, 1995, which dismissed counts II, III and IV of the complaint; 4) reverse the order of September 12, 1995, denying the plaintiff leave to file her proposed third-amended complaint; and 5) remand this case to the circuit court for further proceedings, with directions to enter an order granting the plaintiff leave to file counts II, III and IV of her proposed third-amended complaint.

Affirmed in part, reversed in part, and vacated in part; cause remanded with directions.

HARTMAN, P.J., and SOUTH, J., concur.