2023 IL App (1st) 221639-U

THIRD DIVISION
December 13, 2023

No. 1-22-1639

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

| | | |
|---|---|---|
| JOHN H. RAY, III, | ) | Appeal from the Circuit Court of Cook County. |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | No. 2021 L 3412 |
| | ) | |
| R.A. MECHANICAL, INC., d/b/a R.A. PLUMBING & MECHANICAL; ROBERT J. ARVETIS; | ) | |
| | ) | Honorable Mary Colleen Roberts, |
| Defendants-Appellees | ) | Judge, presiding. |

JUSTICE D.B. WALKER delivered the judgment of the court.
Justices Lampkin and Reyes concurred in the judgment.

**ORDER**

¶ 1    *Held:*  The trial court did not err in granting defendants' motions to dismiss. Affirmed.

¶ 2    Plaintiff John H. Ray, III, filed a complaint against R.A. Mechanical, Inc., d/b/a R.A. Plumbing & Mechanical (R.A. Mechanical) and Robert J. Arvetis (the president of R.A. Mechanical) in connection with plumbing services for a construction project at plaintiff's home. The complaint alleged breach of contract (count I), common law fraud (count II), professional negligence (count III), and violations of the Consumer Fraud and Deceptive Business Practices

Act (Consumer Fraud Act) (815 ILCS 505/1 *et seq.* (West 2020)) (count IV).[1]  Initially, defendants filed a motion to dismiss pursuant to section 2-619.1 of the Code of Civil Procedure (Code) (735 ILCS 5/2-619.1 (West 2022)), which the trial court granted but with leave to replead solely as to counts I and II.  Plaintiff subsequently amended his complaint with respect to counts I and II, which defendants then moved to dismiss pursuant to section 2-615 of the Code (735 ILCS 5/2-615(e) (West 2022)).  The court granted defendants' motion and dismissed the cause with prejudice.  On appeal, plaintiff contends that the trial court erred in dismissing counts I, II, and IV because (1) regarding count I, it improperly made factual findings and rejected as " 'back door' consideration the direct payment promise by plaintiff and consent to approve defendants as subcontractors"; (2) regarding count II, it failed to consider "the entirety of the factual allegations" that constituted plaintiff's alleged "change order scheme" instead of one written change order; and (3) regarding count IV, it erroneously found that plaintiff's allegation provided duplicative recovery for his breach of contract claim.  We affirm.[2]

¶ 3                                    BACKGROUND

¶ 4      As noted above, the trial court dismissed counts I and II of the original complaint with leave to replead, but it dismissed counts III and IV, presumably with prejudice, although not expressly stated in its order.  Plaintiff then filed an amended complaint focused solely on counts I and II, which fully incorporated all allegations and claims from the original complaint and attached the original complaint as an exhibit.  In his brief before this court, plaintiff additionally states that

---

[1]  Plaintiff erroneously labeled this count as a duplicate count "III."

[2]  This appeal has been resolved without oral argument upon the entry of a separate written order pursuant to Illinois Supreme Court Rule 352(a) (eff. July 1, 2018).

the factual allegations in the amended complaint[3] are "substantially the same" as those in the original complaint. Accordingly, we will recite the factual allegations from both the original and the amended complaint.

¶ 5    On September 7, 2019, plaintiff entered into a written general contractor agreement (the Agreement) with Rigsby Builders, Inc. (Rigsby), related to the remodeling of plaintiff's home, which plaintiff and Rigsby subsequently amended on April 14, 2020. On June 1, 2020, Rigsby entered into a written subcontractor agreement (the Subcontractor Agreement) with R.A. Mechanical to provide plumbing subcontractor services on the remodeling project for a total cost of $21,125. This amount consisted of $15,625 for "Rough Plumbing" and "Gas Pipe," and an additional $5,500 in "Trim Plumbing." Plaintiff admitted that he never entered into any written agreement with defendants and further described the Subcontractor Agreement between R.A. Mechanical and Rigsby as a "collateral agreement (to which [plaintiff] was not a party)."

¶ 6    Around July 2020, plaintiff entered into an oral agreement (the first oral agreement) with defendants. Plaintiff stated that "in order to obtain and in exchange for [plaintiff's] consent and for his direct agreement and obligation to make payment," defendants made various representations concerning the work they promised to perform, including "performing all of the subcontracted plumbing services in compliance with (a) the [S]ubcontractor [A]greement, (b) the building code of the City of Chicago, (c) the architectural plans ***, and most important (d) [plaintiff's] direction (an obligation beyond the [S]ubcontractor [A]greement)."

¶ 7    Around August 24, 2020, plaintiff expressed dissatisfaction with certain aspects of the plumbing work. Plaintiff met with Rigsby and Arvetis, and the parties agreed on a plan to address plaintiff's issues with the plumbing. Around September 16, 2020, the parties agreed orally that

---

[3] Plaintiff's brief erroneously refers to the amended complaint as the "Second Amended" complaint. No such second amended complaint exists in the record on appeal.

the plan would cost plaintiff an additional $2,500 "all in" (the second oral agreement). By October 19, 2020, however, R.A. Mechanical sent two invoices to Rigsby for the changes totaling $12,256.16: one invoice for $10,756.16 (dated October 5, 2020) and another for $1,500 (dated October 19, 2020). Plaintiff refused to pay more than the $2,500 amount purportedly agreed to.

¶ 8 Following discussion amongst the parties, plaintiff and Rigsby each agreed to pay 1/3 of the $12,256.16, *i.e.*, $4,085.39. Plaintiff added that, "reflecting part of these exchanges and agreement," Arvetis stated the following in an e-mail sent to plaintiff on November 19, 2020: "The only way that I will accept the 1/3 split[,] however, is with a signed letter through my attorney that will state [that] I am completely off of the remainder of the project, you accept the plumbing as is, and [you] lose any and all warranties from us regarding your plumbing." Plaintiff stated that, "upon information and belief," he made the additional payment to defendant "through Rigsby," but defendants failed to complete the work as promised. Defendants refused to complete the work, and plaintiff had to hire another plumber to do so, which cost him in excess of $2,500.

¶ 9 On March 30, 2021, plaintiff filed his initial complaint against defendants alleging, *inter alia*, breach of contract (count I), fraud (count II), and violation of the Consumer Fraud Act (count IV). Plaintiff's breach of contract claim alleged that defendants breached their oral agreements with plaintiff based upon defendants' failure to complete all of the rough plumbing despite plaintiff paying "through Rigsby" $19,710.39, which consisted of $15,625 from the original Agreement plus plaintiff's 1/3 share of the subsequently negotiated agreement ($4,085.39). Plaintiff's fraud claim alleged that defendants "intentionally and knowingly" represented that (1) the work would comply with both the architectural plans and plaintiff's direction and (2) they would complete all of the rough plumbing and subsequently negotiated "correction" work. Finally, plaintiff's Consumer Fraud Act claim alleged that defendants engaged in the following unfair and deceptive acts or practices: knowingly and falsely claiming their work would conform to the architectural

4

plans and plaintiff's direction, intentionally deviating from the architectural plan and plaintiff's direction so as to demand a change order and obtain more money, agreeing to complete the correction work in exchange for $24,795.78 but with no intention of completing the work, falsely representing the corrective work was complete, and refusing to complete any remaining work. Plaintiff added, "Defendants' actions are likely to cause public injury, because of the potential for repetition."

¶ 10    On December 14, 2021, defendants filed a motion to dismiss the complaint pursuant to section 2-619.1 of the Code.  Defendants motion contended, *inter alia*, that counts I, II, and IV should be dismissed pursuant to both sections 2-615 and 2-619 (735 ILCS 5/2-615, 2-619 (West 2022)).  On March 18, 2022, the trial court granted the motion to dismiss pursuant to section 2-615.  The breach of contract and fraud claims (counts I and II, respectively) were dismissed "with leave to replead," whereas the professional negligence and Consumer Fraud Act claims (counts III and IV) were dismissed without the leave to replead language.[4]  Regarding count IV, the court found that plaintiff "failed to allege sufficient facts to give rise to a cause of action for consumer fraud" and stated that this claim "would be more aptly pled as a claim for breach of contract."

¶ 11    On April 15, 2022, plaintiff filed an amended complaint.  Plaintiff's amended complaint alleged only breach of contract (count I) and fraud (count II) but stated that it "incorporate[d] by reference all of the allegations and claims of the original complaint in full."  The amended complaint also included the original complaint as an exhibit.

¶ 12    Plaintiff's breach of contract claim again alleged that defendant breached the oral agreements by failing to complete the rough plumbing and "correction work" despite plaintiff having paid $15,625 for the work "through Rigsby Builders."  With respect to the oral agreements,

---

[4]  Plaintiff does not challenge the dismissal of count III.

plaintiff alleged that, "in exchange for his direct obligation to pay for the agreed services *** and agreement to providing his consent to [d]efendants serving as the subcontractors on the project," defendants agreed to complete "the rough plumbing and correction work *** consistent with the [S]ubcontractor [A]greement, [c]ity building code, architectural plans, and at [p]laintiff's discretion." Plaintiff claimed "significant injury and damages" due to defendants' breach.

¶ 13    In support of his claim for fraud, plaintiff re-alleged that defendants "intentionally and knowingly" represented that (1) the plumbing work "would comply" with both the architectural plans, the "City building code," and plaintiff's direction; and (2) they "would complete" all of the rough plumbing and subsequently negotiated "correction" work. Plaintiff alleged that defendants only made those representations to advance a " 'change order' scheme" to defraud plaintiff. Plaintiff explained that the scheme involved defendants receiving plaintiff's approval to perform the plumbing work at the agreed rate, but with defendants having "no intention of performing the work they represented they would perform" and then demanding "additional 'change orders' and money to complete the work promised."

¶ 14    On June 7, 2022, defendants filed a motion to dismiss pursuant to section 2-615 of the Code. On October 31, 2022, the trial court entered a written order granting defendants' motion, dismissing the breach of contract and fraud claims with prejudice.

¶ 15    This appeal follows.

¶ 16                                    ANALYSIS

¶ 17    On appeal, plaintiff contends that the trial court erroneously granted defendants' motions to dismiss. Plaintiff argues, in essence, that the court improperly made factual findings, failed to consider the entirety of his factual allegations, and wrongfully found his Consumer Fraud Act claim was duplicative of his breach of contract claim. Plaintiff asks that we reverse the judgment of the trial court and remand for further proceedings.

¶ 18                                        *Jurisdiction*

¶ 19     Although neither party has raised the issue, we must discuss our jurisdiction. We have an independent duty to consider whether we have jurisdiction and to dismiss an appeal for lack of jurisdiction. *Williams Montgomery & John Ltd. v. Broaddus*, 2017 IL App (1st) 161063, ¶ 32 (citing *Archer Daniels Midland Co. v. Barth*, 103 Ill. 2d 536 (1984)).

¶ 20     This court has the authority to hear appeals from (1) "final judgments" and (2) nonfinal orders as defined by supreme court rule. Ill. Const. 1970, art. VI, § 6. A proceeding for attorney fees pursuant to Rule 137 is "within and a part of the underlying civil action, not a separate cause of action." *Phoenix Capital, LLC v. Tabiti*, 2016 IL App (1st) 162686, ¶ 7 (citing *Marsh v. Evangelical Covenant Church of Hinsdale*, 138 Ill. 2d 458, 468 (1990), *Berger v. Matthews*, 216 Ill. App. 3d 942, 944 (1991)). Therefore, it must be resolved before the case becomes appealable absent a finding pursuant to Rule 304(a) (Ill. S. Ct. R. 304(a) (eff. Mar. 8, 2016)) that there is no just reason to delay enforcement or appeal. *Id.*

¶ 21     The trial court here entered its final judgment granting defendants' 2-615 motion to dismiss on October 31, 2022. Plaintiff filed his notice of appeal on the same day. The record on appeal in this case, however, reveals that on November 30, 2022, defendants timely filed a motion for sanctions, including attorney fees, pursuant to Rule 137. See Ill. S. Ct. R. 137(b) (eff. Jan. 1, 2018)) (providing that motions brought under this rule must be filed within 30 days of either the final judgment or the ruling on a timely postjudgment motion). Plaintiff then filed a combined response opposing defendants' motion for sanctions and a cross-motion for Rule 137 sanctions on December 1, 2022. Plaintiff's cross-motion similarly sought attorney fees. There is nothing in the record (nor in the parties' briefs) indicating whether the trial court disposed of these motions.

¶ 22     Although plaintiff's notice of appeal was initially premature, this fact does not necessarily deprive this court of jurisdiction. Where, as here, a timely postjudgment motion has been filed

No. 1-22-1639

after the filing of a notice of appeal, Rule 303(a)(2) states that the notice of appeal becomes effective when the trial court enters an order disposing of that timely postjudgment motion.  Ill. S. Ct. R. 303(a)(2) (eff. July 1, 2017).  According to the circuit clerk's online docket for this case— of which this court may take judicial notice (see *People v. Grau*, 263 Ill. App. 3d 874, 876 (1994))—the trial court entered an order denying the motions on February 16, 2023.[5]  Pursuant to Rule 303(a)(2), plaintiff's notice of appeal became effective at that time, *i.e.*, when the court disposed of the motions.  Therefore, we have jurisdiction over this appeal.

¶ 23                                    *Plaintiff's Appellate Briefs*

¶ 24    We further note that plaintiff's brief does not comply with Illinois Supreme Court Rule 341(h).  In particular, the statement of facts in plaintiff's briefs does not cite to the record, but instead to various pages in the separate appendix to plaintiff's opening brief.  This violates Rule 341, which plainly requires reference to "the pages of *the record on appeal* " and not the appendix to a brief.  (Emphasis added.)  Ill. S. Ct. R. 341(h)(6) (eff. Oct. 1, 2020).

¶ 25    Supreme court rules are not mere suggestions; they are rules that must be followed.  *In re Marriage of Hluska,* 2011 IL App (1st) 092636, ¶ 57.  "Where an appellant's brief fails to comply with supreme court rules, this court has the inherent authority to dismiss the appeal."  *Epstein v. Galuska,* 362 Ill. App. 3d 36, 42 (2005).  We may also strike an appellant's brief for noncompliance with Rule 341.  *North Community Bank v. 17011 South Park Ave., LLC*, 2015 IL App (1st) 133672, ¶ 14.  Nonetheless, we recognize that striking a brief or dismissing an appeal for failure to comply with supreme court rules is a harsh sanction.  *In re Detention of Powell,* 217 Ill. 2d 123, 132 (2005).  Here, we are able to find the precise location in the record to which plaintiff's citations

---

[5]  Neither party challenges these denials in this appeal.

8

to the separate appendix refer, and we can otherwise discern the basis for plaintiff's claims of error, despite the violation of court rules. Accordingly, we will consider the merits of the appeal.

¶ 26                                    *Section 2-615 of the Code*

¶ 27    To survive a section 2-615 motion to dismiss, a complaint must be both legally and factually sufficient. *Coghlan v. Beck*, 2013 IL App (1st) 120891, ¶ 22. When ruling on a motion to dismiss under section 2-615, a court must accept all well-pleaded facts in the complaint as true and draw all reasonable inferences from those facts in favor of the nonmoving party. *Id.* ¶ 24 (citing *Edelman, Combs & Latturner v. Hinshaw & Culbertson,* 338 Ill. App. 3d 156, 164 (2003)). Thus, a court should deny a motion to dismiss pursuant to section 2-615 unless it is clearly apparent that no set of facts can be proved that would entitle the plaintiff to recovery. *Id.* (citing *Marshall v. Burger King Corp.,* 222 Ill. 2d 422, 429 (2006)).

¶ 28    Additionally, it is well established that exhibits attached to a complaint become a part of a complaint, and if there is any conflict between the factual matters in the exhibits and those alleged in the complaint, the factual matters in the exhibit control. *Id.* (citing *Charles Hester Enterprises, Inc. v. Illinois Founders Insurance Co.*, 114 Ill. 2d 278, 287 (1986) (citing *Fowley v. Braden*, 4 Ill. 2d 355, 359-60 (1954))). We review *de novo* the trial court's decision on a motion to dismiss brought under section 2-615. *Id.* Finally, we review the judgment, not the reasoning, of the trial court, and we may affirm on any grounds in the record, regardless of whether the trial court relied on those grounds or whether the trial court's reasoning was correct. *Id.* (citing *Leonardi v. Loyola University of Chicago*, 168 Ill. 2d 83, 97 (1995)).

¶ 29                                    *Breach of Contract*

¶ 30    The essential elements of a breach of contract claim are: (i) the existence of a valid and enforceable contract, (ii) performance by the plaintiff, (iii) breach of the contract by the defendant,

and (iv) resultant injury to the plaintiff. *Coghlan*, 2013 IL App (1st) 120891, ¶ 27. The issue presented to this court concerns the first element, the existence of a valid and enforceable contract.

¶ 31 It has long been held that, in Illinois, "the basic ingredients" of a contract are an offer, an acceptance, and consideration. *Melena v. Anheuser-Busch, Inc.*, 219 Ill. 2d 135, 151 (2006) (citing *Steinberg v. Chicago Medical School*, 69 Ill. 2d 320, 329 (1977)). Consideration must consist of something of detriment or disadvantage to one party or benefit to the other, and the bargained-for exchange between them. *Mulvey v. Carl Sandburg High School*, 2016 IL App (1st) 151615, ¶ 35 (citing *Steinberg*, 69 Ill. 2d at 330). It is well established that the mere performance of an act that one is legally obligated to do is not consideration that would support a contract, because there is no detriment. *Id.* (citing *Johnson v. Maki & Associates, Inc.*, 289 Ill. App. 3d 1023, 1028 (1997)).

¶ 32 In this case, the trial court correctly granted defendants' motion to dismiss plaintiff's breach of contract claim. Plaintiff's amended complaint alleged that he entered into the Agreement with Rigsby in connection with the renovation of his personal residence, and in turn, Rigsby entered into the Subcontractor Agreement with defendants to perform the plumbing portion of the renovation. Pursuant to the purported oral contracts, plaintiff agreed to (1) fulfill his "direct obligation to pay" defendants for their completion of the rough plumbing and subsequent "correction" work and (2) "consent" to defendants serving as subcontractors. In return, defendants agreed to complete the rough plumbing and correction work in compliance with (1) the Subcontractor Agreement (between defendants and Rigsby only), (2) the "City building code," (3) the architectural plans, and (4) plaintiff's "discretion." Plaintiff alleged that he satisfied his obligation by paying $15,625 to Rigsby, but defendants failed to complete their work.

¶ 33 The work contemplated, however, was already agreed to as part of defendants' contract with Rigsby: both the original work as well as the subsequent "correction" work were included as exhibits to plaintiff's complaint. In addition, plaintiff freely admitted that the work would be

"consistent with" the Subcontractor Agreement (*i.e.*, the agreement solely between defendants and Rigsby). Furthermore, as noted in the exhibit to plaintiff's complaint, the amount plaintiff paid ($15,625) is precisely the amount payable for the "rough plumbing" and "gas pipe" in the Subcontractor Agreement. Plaintiff thus already had a preexisting duty to pay defendants (through Rigsby) for any work defendants completed. Although plaintiff alleged the oral agreements had additional obligations on the part of defendants (such as, their work being in compliance with the "City building code," etc.), plaintiff did not allege any additional consideration in return for these purported promises. Consequently, plaintiff's purported oral contracts fail for want of consideration. See *Mulvey*, 2016 IL App (1st) 151615, ¶ 35.

¶ 34    Nonetheless, plaintiff asserts that he successfully alleged additional consideration in the form of his "agreement to continue with and approve Defendants as subcontractors." In support of his claim, plaintiff relies primarily upon *Boomer v. AT & T Corp.*, 309 F.3d 404 (7th Cir. 2002). Plaintiff's reliance, however, is misplaced.

¶ 35    In *Boomer*, the plaintiff filed a putative class action complaint against the defendant, and the defendant moved to compel arbitration. *Id.* at 408. The lower court denied the defendant's motion, and the defendant appealed. *Id.* In response to the defendant's arguments on appeal, the plaintiff contended that the "Customer Service Agreement" (CSA)—which the defendant sent to the plaintiff (and which contained a new notice of mandatory arbitration)—was not a valid contract because, *inter alia*, the CSA contained language that his service or billing " 'will not change' " under the CSA. The plaintiff concluded that this indicated that he received no consideration in exchange for his agreement to arbitration. *Id.* at 415-16. The *Boomer* court, however, explained that, in exchange for his agreement to arbitration, the defendant agreed to provide continued telephone services, which the defendant had "no legal obligation to continue providing." *Id.* at 416. The court consequently rejected the plaintiff's argument. *Id.*

¶ 36    We note at the outset that the decisions of lower federal courts are not binding on this court. See *Vulpitta v. Walsh Construction Co.*, 2016 IL App (1st) 152203, ¶ 34 (citing *Prodromos v. Everen Securities, Inc.*, 389 Ill. App. 3d 157, 175 (2009) (citing *Travelers Insurance Co. v. Eljer Manufacturing, Inc.*, 197 Ill. 2d 278, 302 (2001))). Moreover, *Boomer* is factually distinct. There, the court repeatedly stated that the defendant corporation did not have a preexisting duty to provide telephone service to the plaintiff. See *Boomer*, 309 F.3d at 416 (noting both that defendant "had no legal obligation to continue providing Boomer with telephone services" and also defendant's "promise to continue telephone services (something it was not obligated to do)"). Here, by contrast, plaintiff was obligated to "consent" to defendants' completion of the plumbing work. The purported oral agreements stated, *inter alia*, that defendants promised to complete the plumbing work. It is a deeply rooted rule that one of the essential elements for formation of a contract is a manifestation of agreement or mutual assent by the parties to the terms thereof. *Allen v. Amber Manor Apartments Partnership*, 95 Ill. App. 3d 541, 549 (1981). If plaintiff refused to consent to defendants performing the plumbing work, defendants could not fulfill their part of the agreement, vitiating the mutual assent required to form a contract. We reject plaintiff's argument that his consent to defendant fulfilling his promises under the oral agreements can serve as valid consideration. *Boomer* is therefore unavailing, and plaintiff's argument on this point is meritless.

¶ 37                               *Common Law Fraud*

¶ 38    Plaintiff's common law fraud claim is grounded in the underlying tortious conduct of fraudulent misrepresentation. See *Soules v. General Motors Corp.*, 79 Ill. 2d 282, 286 (1980). To prevail on a claim of fraudulent misrepresentation, a plaintiff must establish the following elements: " '(1) a false statement of material fact; (2) known or believed to be false by the person making it; (3) an intent to induce the plaintiff to act; (4) action by the plaintiff in justifiable reliance on the truth of the statement; and (5) damage to the plaintiff resulting from such reliance.' "

*Certain Underwriters at Lloyd's, London v. Abbott Laboratories*, 2014 IL App (1st) 132020, ¶ 47 (quoting *Doe v. Dilling,* 228 Ill. 2d 324, 342-43 (2008)).

¶ 39    Claims of fraud must meet a higher standard of specificity and require specific allegations of facts from which "fraud is the necessary or probable inference." See *Connick v. Suzuki Motor Co., Ltd.*, 174 Ill. 2d 482, 496-97 (1996). A promise to perform some future act, even if made with the intent to not perform that act, is not actionable fraud unless that false promise is "part of a fraudulent scheme." *People ex rel. Peters v. Murphy-Knight*, 248 Ill. App. 3d 382, 387-88 (1993); see also *Merrilees v. Merrilees*, 2013 IL App (1st) 121897, ¶ 41 (holding that "assurances as to future events are generally not considered misrepresentations of fact"). In addition, an opinion is not a false statement of material fact and does not support a claim of fraud. *Id.* ¶ 30. Notably, as our supreme court held over a century ago, "A mere breach of a contract does not amount to a fraud, and neither a knowledge of inability to perform, nor an intention not to do so, would make the transaction fraudulent." *Miller v. Sutliff*, 241 Ill. 521, 527 (1909).

¶ 40    In this case, plaintiff alleged that defendants "intentionally and knowingly" misrepresented that (1) the plumbing work "would comply" with both the architectural plans, the "City building code," and plaintiff's direction; and (2) they "would complete" all of the rough plumbing and subsequently negotiated "correction" work. These statements, however, all involve *future* conduct: defendants purportedly misrepresented that they *would* comply with various requirements and that they *would* complete the rough plumbing and correction work. Therefore, even if defendants had no intention to meet those requirements, plaintiff still cannot successfully plead common law fraud. See *Peters*, 248 Ill. App. 3d at 387-88.

¶ 41    Although plaintiff asserts that defendant's future promises were part of a scheme, his attempts to rescue this claim must fail. Plaintiff alleged that the scheme was simply that defendants (1) would "receive [plaintiff's] approval" to perform the plumbing work at the rate agreed but had

"no intention of performing the work they represented they would perform" and then (2) demand "additional 'change orders' and money to complete the work promised." Plaintiff, however, does not specify what exactly (if anything) defendants did that induced plaintiff to "approve" defendants as the subcontractor. As discussed, a "successful common law fraud complaint must allege, with specificity and particularity, facts from which fraud is the necessary or probable inference, including what misrepresentations were made, when they were made, who made the misrepresentations and to whom they were made." *Connick*, 174 Ill. 2d at 496-97. Even accepting all well-pleaded facts in the complaint as true and drawing all reasonable inferences from those facts in favor of the nonmoving party (here, plaintiff), as we must (*Coghlan v. Beck*, 2013 IL App (1st) 120891, ¶ 24), we cannot hold that fraud is the necessary or probable inference from plaintiff's allegations (*Connick*, 174 Ill. 2d at 496-97). To the contrary, plaintiff's allegations sound in breach of contract, which under well-established precedent do not amount to common law fraud. See *Miller*, 241 Ill. at 527. We therefore reject plaintiff's claim of error on this point.

¶ 42 Furthermore, plaintiff's reliance upon *Mitchell v. Norman James Construction Co.*, 291 Ill. App. 3d 927 (1997), does not alter our holding. In *Mitchell*, the plaintiff homeowner alleged that, to induce her to enter into a construction contract and make periodic payments under the contract, the defendant contractor (1) did not build in accordance with the architect's plans, (2) "intentionally concealed his defective work," and (3) "failed to request that village authorities inspect his work" (which would have revealed its nonconformity with both the plans and village ordinances). *Id.* at 940. The *Mitchell* court found that the plaintiff sufficiently alleged a scheme or pattern of broken promises that could constitute promissory fraud. *Id.* Unlike *Mitchell*, however, plaintiff here does not describe a scheme or series of misrepresentations to the degree of specificity required of these claims. As we noted above, this is in substance a mere breach of

contract claim masquerading as a common law fraud claim, which does not amount to fraud. *Miller*, 241 Ill. at 527. Plaintiff's reliance upon *Mitchell* is therefore unavailing.

¶ 43                                   *The Consumer Fraud Act*

¶ 44    The Consumer Fraud Act is a regulatory and remedial statute intended to protect consumers, borrowers, and businesspersons against fraud, unfair methods of competition, and other unfair and deceptive business practices. *Robinson v. Toyota Motor Credit Corp.*, 201 Ill. 2d 403, 416-17 (2002). The elements of a claim under the Consumer Fraud Act are: (1) a deceptive act or practice by the defendant, (2) the defendant's intent that the plaintiff rely on the deception, and (3) the occurrence of the deception during a course of conduct involving trade or commerce. *Id.* at 417. Although the Consumer Fraud Act should be liberally construed (*Connick*, 174 Ill. 2d at 503), a complaint alleging statutory consumer fraud must be pled with the same particularity and specificity as that required under common law fraud (*Id.* at 501). In addition, although plaintiff's reliance is not an element of a claim under the Consumer Fraud Act, a valid claim must show that the consumer fraud proximately caused plaintiff's injury. *Id.*

¶ 45    Nonetheless, it is important to note that "[a] breach of a contractual promise, without more, is not actionable under the Consumer Fraud Act." *Avery v. State Farm Mutual Automobile Insurance Co.*, 216 Ill. 2d 100, 169 (2005) (citing *American Airlines, Inc. v. Wolens*, 513 U.S. 219, 233 (1995) (quoting *Golembiewski v. Hallberg Insurance Agency, Inc.*, 262 Ill. App. 3d 1082, 1093 (1994))). In other words, the purpose of the Consumer Fraud Act is not to " 'supplement every breach of contract claim with a redundant remedy.' " *Id.* (quoting *Zankle v. Queen Anne Landscaping*, 311 Ill. App. 3d 308, 312 (2000)). As the *Avery* court reiterated, the "deceptive act or practice" element required of these claims involves " 'more than the mere fact that a defendant promised something and then failed to do it. That type of "misrepresentation" occurs every time a defendant breaches a contract.' " *Id.* (quoting *Zankle*, 311 Ill. App. 3d at 312).

¶ 46    In this case, the trial court did not err in granting defendants' motion to dismiss this claim. Here, as in *Zankle*, plaintiff's Consumer Fraud Act claim is simply a breach of contract claim. Both counts alleged that, in essence, defendants failed to perform their contractual obligations, namely, that defendants promised to complete certain plumbing work for a set price but failed to do so. Defendants' asserted failure to complete the plumbing work to plaintiff's satisfaction and to complete the additional work for a previously agreed-upon price does not transform a contractual breach into consumer fraud. This is especially true here, where plaintiff's allegations surrounding the Consumer Fraud Act count solely relate to allegedly deceptive acts and practices directed solely against plaintiff: Plaintiff merely speculated that defendants' actions were likely to cause public injury because of the *potential* for repetition. This court has repeatedly held that isolated breach of contract claims are insufficient to establish a violation of the Consumer Fraud Act. See, *e.g.*, *Golembiewski v. Hallberg Insurance Agency, Inc.*, 262 Ill. App. 3d 1082, 1093 (1994) ("In the absence of any evidence about the defendant's practice, other than this isolated breach of contract claim, the directed verdict in favor of the plaintiff on the consumer fraud claim must be reversed."), *appeal denied*, 157 Ill. 2d 499 (1994); *cf. Rumford v. Countrywide Funding Corp.*, 287 Ill. App. 3d 330, 336 (1997) (holding that summary judgment in favor of the defendant was inappropriate where the plaintiff's consumer fraud claim was "not based on a simple breach of contract but on an allegation that [the] defendant was engaged in a pattern of misrepresenting to customers that additional charges would not be assessed at the time their mortgages were released"), *appeal denied*, 174 Ill. 2d 594 (1997); see also *Martinez v. River Park Place, LLC*, 2012 IL App (1st) 111478, ¶ 38. Plaintiff offers no compelling reason for us to depart from existing precedent. Accordingly, we reject this claim of error.

¶ 47    Although plaintiff complains that the trial court dismissed this claim on "*sua sponte* grounds" without affording him an opportunity to replead, neither complaint withstands scrutiny.

First, the court's basis for dismissal—that plaintiff "failed to allege sufficient facts to give rise to a cause of action for consumer fraud"—was hardly *sua sponte*; rather it was, in substance, a dismissal pursuant to section 2-615. See 735 ILCS 5/2-615 (West 2022); *RBC Mortgage Co. v. National Union Fire Insurance Co. of Pittsburgh*, 349 Ill. App. 3d 706, 711 (2004) ("The question presented by a section 2-615 motion to dismiss is whether sufficient facts have been pled in the complaint which, if proved, would entitle plaintiff to relief."). Finally, plaintiff's complaint that the court erred in allowing him an opportunity to replead is unsupported by any citation to relevant authority. This undeveloped argument is thus forfeited. See Ill. S. Ct. R. 341(h)(7) (eff. Oct. 1, 2020). The trial court's granting of defendants' motions to dismiss was thus not erroneous.

¶ 48                                CONCLUSION

¶ 49    The trial court properly granted defendants' motions to dismiss. Accordingly, we affirm the judgment of the circuit court of Cook County.

¶ 50    Affirmed.